### BROOKS v. GREAT ATLANTIC & PACIFIC TEA CO.*

No. 8349.

Circuit Court of Appeals, Ninth Circuit.

Nov. 10, 1937.

*Rehearing denied Dec. 23, 1937.

William E. Prather, of Los Angeles, Cal., for appellant.

Kelly L. Taulbee, of Los Angeles, Cal. (Munn, Anderson & Liddy, of New York City, of counsel), for appellee.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

STEPHENS, Circuit Judge.

This is an appeal from an interlocutory decree of the District Court restraining defendant from the use of a copyrighted trade-name upon the grounds of trade-mark infringement and unfair trade. The decree orders an accounting.

The plaintiff (appellee), the Great Atlantic & Pacific Tea Company, a corporate citizen of New Jersey with principal place of business in New York, brought this action in the United States District Court, Southern District of California, Central Division, (defendant residing therein) alleging in its bill of complaint that its trade-mark "Eight O'Clock" and "8 O'Clock" as a brand of coffee was being infringed by the defendant (appellant), Will Brooks, individually and trading as Brooks & Co., and claiming that defendant was practicing unfair competition in the use of "8 Bells" as a sales brand of coffee. The defendant answered admitting and denying certain of the allegations contained in the bill and the case was tried and submitted to the court upon the pleadings and two written stipulations of fact. The court found in favor of plaintiff and entered its interlocutory decree ordering an accounting and enjoining the use of the designation "8 Bells" by defendant both on the ground of trade-mark infringe-

ment and unfair competition. The sum of money involved amounts to many times the sum of $3,000. Thus, the jurisdiction of the court to entertain both phases of the complaint is established.

The defendant's first and most stressed point upon the appeal is that the court by unduly pressing its authority and position upon the attorney for defendant required his stipulation of the facts and required his submitting the case for decision upon such stipulation of facts. (It should be noted that defendant is not represented here by his trial attorney, who never has made any complaint as to the court's conduct.)

The court's calendar was badly congested, and plaintiff, desiring an early adjudication, requested a hearing before a special master, but defendant objected. The court then made its order from which we quote: "Whereupon the court orders that setting of this cause for trial be continued two weeks; counsel to file proposed agreed statement of facts."

The parties eventually agreed to the facts in two signed written statements, defendant reserving his exception to the court's ruling that certain facts contained in the statement were relevant. No objection was ever made or exception ever taken to the order quoted from.

Thereafter attorneys for both parties appeared in open court and orally submitted the case upon the record including the agreed statements of fact and written briefs. In due time the court decided that defendant's label was deceptively similar to plaintiff's trade-mark and that defendant had practised unfair competition by using it. (Note that no attack has been made upon the legal status of defendant's claimed trade-marks.) Findings of fact and conclusions of law were approved as to form (purporting correctness under District Court Rule 44); they were duly signed and filed, the interlocutory decree was entered, and defendant filed his petition for appeal. Thereafter the original order continuing the case and providing for stipulation of facts was changed by the court to more fully and formally cover these subjects.

■ The true dignity and power of a federal judge, and that of an attorney in his court, are equal within the sphere of their respective duties. The judge must not compel agreement by arbitrary use of his power and the attorney must not meekly submit to a judge's suggestion, though it be strongly urged.

■ However, the record in this case shows only a commendable course of co-operation, by and between the judge and attorneys, to save time in an overbusy court. Time after time attorneys for both sides signed papers entirely consistent with the trial of the case through stipulation of fact. In these circumstances objection for the first time upon appeal, through the medium of a different attorney, cannot be approved.

■ Defendant contends that no proof was had as to willfulness or as to any fraudulent intent of any act of which plaintiff complained. From a careful reading of the record it is disclosed that practically all matters alleged in the complaint were either admitted in the answer (admissions in the answer have the force of evidence; see Patterson v. Gaines (1858) 6 How. (47 U. S.) 550, 12 L.Ed. 553) or stipulated to by the defendant. However, neither willfulness nor fraudulent intent is necessary to the relief herein sought. (See authorities cited, infra.)

■ It is stated in the stipulation of facts that plaintiff has brought a number of actions in the courts against other alleged violators of plaintiff's trade-mark and that in each and every case the matter has been settled favorably to plaintiff's contentions without any consideration whatever passing. Defendant stipulated as to the truth of this fact but objected to its relevancy. The stipulation included the statement that such evidence was to be received solely to prove that plaintiff had been diligent in protecting his rights under his trade-mark. The relevancy of such evidence for this limited purpose is apparent.

Defendant next complains that there was no evidence either of infringement or of any unfair competition, but we think otherwise.

The evidence in this case is wholly by admissions in the answer and by written stipulation. It is without conflict and, by concession of the parties, establishes the following facts.

The plaintiff is the successor in interest and good will of a long established food selling business which began the use of the trade-mark "Eight O'Clock" and "8 O'-Clock" to identify and distinguish its coffee from others in the market about the year 1869. It had not been so used before and it has been so used continuously since such date. Such trade-mark was registered in the U. S. Patent Office, December 23, 1890,

and reregistered in slightly different form but retaining the words "Eight O'Clock" or "8 O'Clock" on June 14, 1927, July 23, 1929, April 25, 1933, and January 16, 1934.

Exclusive ownership by plaintiff and its predecessors in interest of such trade-mark has been continuously claimed and insisted upon in and out of court.

Such trade-mark had become well known to the coffee trade and customers long prior to the alleged infringements and unfair practices. Long prior to such alleged acts plaintiff's coffee in bags and packages similar to four types exhibited in court and bearing such trade-mark had been extensively advertised and sold in plaintiff's 1,500 stores in Canada and throughout the United States, including the Southern judicial district of California. The defendant had notice of plaintiff's claimed rights in such trade-mark prior to defendant's acts about to be related.

Defendant first adopted the designation "8 Bells" for his coffee for sale in bags and packages on November 25, 1932, upon which date he copyrighted such designation. Since this date he has sold his coffee in bags and packages labeled "8 Bells" and continues to sell the same in the Southern judicial district of California. Plaintiff has never sold defendant's coffee or any coffee designated as "8 Bells" in any of its stores or at all.

■ We judicially notice the fact that the word "Bells" is a nautical term for "O'-Clock" and so used eight bells after midnight means 8 o'clock in the morning.

■ We hold, as did the trial court, that the trade-name of defendant's coffee is deceptively similar to and does suggest plaintiff's trade-mark and causes confusion between the two to the plaintiff's injury. The use of the designation "8 Bells" by defendant constitutes unfair trade practice and infringes plaintiff's trade-mark of "Eight O'-Clock" and "8 O'Clock."

The following quotations and citations of authorities, when related to the facts hereinabove stated, are sufficient to indicate that the evidence supports the findings and the judgment except as to two instances, which we treat by modifying the decree.

■ The authorities cited are also conclusive to the effect that no element of willfulness, intention, or fraud is necessary for recovery in an action of the kind we are here considering.

### The Principles of Law Applicable.

■ "The test of identity is not whether, when goods are placed side by side, a difference can be recognized in the labels or marks; but the test is, when such goods are not placed side by side, would an ordinarily prudent purchaser be liable to purchase the one, believing that he was purchasing the other." McDonald & Morrison Mfg. Co. v. H. Mueller Mfg. Co., 183 F. 972, 974.

■ As stated in the case of Juvenile Shoe Company v. Federal Trade Commission (C. C.A.9) 289 F. 57, 59: "Injunction will lie against a corporation that by any artifice deceives the public into believing that its goods are those of another corporation having a similar name; and this is true irrespective of any intent to mislead the public, and especially is it true where the corporations are engaged in the same business." See, also, American Products Company v. American Products Company (D.C.) 42 F. (2d) 488, 490.

■ In Chesebrough Manufacturing Co. v. Old Gold Chemical Co., Inc. (C.C.A.9) 70 F.(2d) 383, 385, the court stated: "We are likewise of opinion that the label of appellee so closely resembles appellant's label as to lead to confusion and deception. It is true that appellee places on its article distinguishing marks by which it could be identified by a careful and discriminating purchaser, but this is not enough, for it is the casual or ordinary purchaser who must be protected, and as to him the test is general appearance."

■ The Circuit Court in the Seventh Circuit expressed itself in similar language in the case of Northam Warren Corporation v. Universal Cosmetic Co., 18 F.(2d) 774, 775: "Whether there is an infringement of a trade-mark does not depend upon the use of identical words, nor on the question as to whether they are so similar that a person looking at one would be deceived into the belief that it was the other; but it is sufficient if one adopts a trade-name or a trade-mark so like another in form, spelling, or sound, that one with a not very definite or clear recollection as to the real trade-mark, is likely to become confused or misled." Memory comparison is all that is necessary.

In Queen Manufacturing Co. v. Isaac Ginsberg & Bros., Inc. (C.C.A.) 25 F.(2d) 284, 287, a similar holding is found.

■ It would appear that defendant was laboring under the mistaken idea that regis-

tration of his label under the Copyright Act of 1874 (18 Stats. 78) determined his right to its use. Of course, such registration does not immunize him from such attacks upon his use of the copyrighted name as are contained in the complaint filed in this cause.

The Decree Must Be Modified.

Following the usual formalities in the decree there are seven numbered paragraphs of factual statements. Immediately following these are several unnumbered but distinctly separate paragraphs defining the relief accorded plaintiff.

In the first of these "relief" paragraphs it is decreed "that plaintiff is entitled to the exclusive use of the term '8 Bells' and 'Eight Bells' as its trade mark." Obviously, the word "Bells" has been inadvertently used instead of "O'Clock" and the decree is modified in this particular by striking the word "Bells" and substituting the word "O'Clock" in each instance.

In the second of these "relief" paragraphs the defendant is enjoined from the use of the word "Bell" or "Bells" or "O'Clock" in any manner or combination in connection with the sale of coffee. There is nothing in this case justifying such restriction upon the proper use of these common words of the English language. This paragraph of the decree will therefore be modified by striking therefrom the following language: "and/or from using the term 'Bell' or 'Bells,' whether associated or not with a numeral indicative of time, in connection with the sale of coffee, and/or from using the term 'Clock' and/or the term 'O'-Clock,' whether associated or not with a numeral indicative of time, in connection with the sale of coffee."

As so modified, the decree is affirmed.