574 F.2d 23
 Jose DEL RIO et al., Plaintiffs, Appellees,
v.
NORTHERN BLOWER CO., et al., Defendants, Appellees,
Liberty Mutual Insurance Company, Lienor, Appellant.
Paul NORMAND, Plaintiff, Appellee,
v.
HUNTER INVESTMENT CORPORATION et al., Defendants, Appellees,
Liberty Mutual Insurance Company, Lienor, Appellant.
 Nos. 77-1379, 77-1522.
 United States Court of Appeals,
First Circuit.
 Argued March 6, 1978.
Decided April 11, 1978.
 
 Martin L. Gross, Concord, N. H., with whom Michael M. Ransmeier and Sulloway, Hollis, Godfrey & Soden, Concord, N. H., were on brief for appellant.
 Gordon A. Rehnborg, Jr., Manchester, N. H., with whom Wiggin & Nourie, Manchester, N. H., was on brief for Jose Del Rio et al., appellees.
 Kenneth R. McHugh, Manchester, N. H., with whom Bussiere & McHugh, Manchester, N. H., was on brief for Paul Normand, appellee.
 Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.
 ALDRICH, Senior Circuit Judge.
 In July, 1970 Jose Del Rio, in the course of his employment by Fibre Processing Corporation in Manchester, New Hampshire, suffered personal injury while operating a waste picker manufactured by a third party. He made claim against Liberty Mutual Insurance Company, Fibre's workmen's compensation carrier, and ultimately made a lump sum settlement totaling $24,695. Under New Hampshire law, Liberty was entitled to sue the third party in Del Rio's name, or Del Rio was entitled to bring suit himself, and recover if the machinery were defective or negligently manufactured, and a cause of his injury. Whoever were to bring the suit, under New Hampshire law the insurer would have a first lien on the recovery equal to the amount paid by it to the employee, less its share of the costs of suit, with the employee to receive the balance. New Hampshire RSA 281:14.[1] Liberty elected not to sue.
 In March, 1975, Del Rio, after duly notifying Liberty, instituted a diversity action against the machine manufacturer in the United States District Court for the District of New Hampshire. Shortly after trial was commenced, the case was settled. On a number of occasions, beginning prior to trial, Del Rio's counsel endeavored to settle the case, and in connection therewith requested Liberty to waive a portion of its lien, to increase Del Rio's share of the recovery. Liberty at all times refused. Consequently, when he ultimately settled for $66,000, the gross amount to which Del Rio was entitled was $66,000 less Liberty's lien of $24,695, or $41,305. The present question then arose who was to pay, and in what proportion, the counsel fee and expenses, which it was agreed properly amounted to $23,659.
 The New Hampshire statute, RSA 281:14 I, n.1, ante, states that the insurance carrier's lien shall bear its "pro rata share of expenses and costs of action as determined in Paragraph IV hereof." Paragraph IV provides as follows:
 "IV. Whenever there is a recovery against a third person under any of the preceding paragraphs, the labor commissioner or the superior court, as the case may be, shall order such division of expenses and costs of action, including attorneys' fees, between employer, or the employer's insurance carrier, and employee as justice may require."
 
 
 1
 Taking the position that Liberty had acted wrongfully in refusing to reduce its lien in order to facilitate settlement, Del Rio moved in the district court to charge the entire costs of suit against Liberty's lien. The court so ordered, with the result that Del Rio received the entire net amount of the settlement, less the $1,037 balance of Liberty's lien, or $40,268, as against Liberty's receipt of $1,037. Liberty appeals.
 
 
 2
 From the standpoint of facilitating settlement, it is obvious that the defendant manufacturer of the waste picker was interested solely in the gross amount it had to pay, and was unconcerned with how the recipients divided it. Hence, to put it baldly, Del Rio was saying to the insurer, you have a duty to make the defendant's offer larger vis-a-vis myself, so that I'll be more willing to settle. It might be sound business judgment for an insurer who fears that if the case is not settled it will lose altogether, to choose to contribute by way of a partial waiver of its lien. The question, however, is whether it is obliged to do so, or be penalized by the court.
 
 
 3
 We use the word "penalized" advisedly. It is manifest that if the insurer had agreed to reduce its lien by whatever amount the court thought fair, it would have recovered the balance, and, correspondingly, would not have been charged by the court with the entire cost of suit. Thus the court, by imposing the entire cost of suit upon Liberty, did two things. It held that the insurer should have agreed to take less, and then, because it did not, gave it even less than that. The statute, at most, authorized a "division," not a penalty.[2]
 
 
 4
 The court's reasoning was set forth in a memorandum opinion. The court found, first, that Liberty had refused to participate in the preparation of the case for trial, or to advance any expenses thereof. This finding was correct. It ruled that Liberty was under no duty with respect to either of these matters. This ruling was correct, and is not presently attacked. A carrier has the option to bring suit; it is not required to do so, or to assist therein. Secondly, the court found that Liberty did not "participate meaningfully in settlement negotiations." This finding, also, was right; the question is the correctness of the ruling that it was obliged to do so.
 
 
 5
 With respect to this the court said, " . . . (O)nce an action has been commenced by an individual, a compensation carrier cannot sit back and refuse blindly to reduce its lien at all. Such an attitude is antithetical to the settlement of these types of cases and . . . is an unwarranted obstruction to the orderly processing of cases and the administration of justice. . . . (T) he refusal of the company to make any reduction of its lien was arbitrary and unrealistic. . . . Justice requires that (it) pay the full amount of the plaintiffs' attorneys' fees . . . and . . . expenses."
 
 
 6
 However desirable it may be from the standpoint of the court's disposing of its calendar that cases be settled rather than tried, it could not be "arbitrary" for the insurer to refuse to reduce its lien unless it had a duty to do so. There is no duty, however, to settle cases, or to reduce one's claims. Nor does the orderly administration of justice require a party to contribute to someone else's settlement. Unless his claim is frivolous, a party is entitled to assert it, and to whatever judicial time is required to try it. See La Buy v. Howes Leather Co., 1957, 352 U.S. 249, 258, 77 S.Ct. 309, 1 L.Ed.2d 290. There is no basis for the general duty to settle seemingly articulated by the court. See, e. g., Cropp v. Woleslagel, 1971, 207 Kan. 627, 633, 485 P.2d 1271, 1276, ("(T)he court should never work to coerce or compel a litigant to make a settlement."); Wolff v. Laverne, Inc., 1962, 17 A.D.2d 213, 233 N.Y.S.2d 555; see also Padovani v. Bruchhausen, 2 Cir., 1961, 293 F.2d 546; 3 J. Moore, Federal Practice, P 16.17, at 1128 (2d ed. 1974).
 
 
 7
 On this appeal Del Rio concedes that as a matter of general principle there is no duty to compromise, and relies solely on the statute. The trial court, citing no common law authorities, briefly adverted to the statute, but spoke mainly of the duty of compensation carriers in particular, and the orderly process and administration of justice in general. We find nothing in the statute or in the statutory concept to support the court's result.
 
 
 8
 At the expense of reciting the obvious, the scheme of workmen's compensation is that the employer, either as a self-insurer, or by payment of premiums to a professional carrier, undertakes to compensate any employee injured in the course of his employment, at the financial rate set by the state, regardless of fault. Conversely, the employee, in consideration of the employer's obligation to pay him irrespective of fault, waives the opportunity of claiming a larger amount on the basis of common law negligence. The statute does not deprive the employee from suing a third party for negligence, or limit the amount recoverable. However, in order to reduce the substantial burden placed upon the employer, either directly as a self-insurer, or indirectly as the payor of insurance premiums, the statute provides that if recovery is had against a third party, the self-insured employer, or his carrier, shall be reimbursed and made whole thereby. This is not a windfall, but a method of reducing the overall cost of the insurance. Indeed, if the employee is allowed to retain the full amount paid by the third party, it could be he that was receiving a windfall in the form of double recovery. See Bilodeau v. Oliver Stores, Inc., 1976, 116 N.H. 83, 352 A.2d 741, 744.
 
 
 9
 Of course, in some cases where the amount of recovery under a third party claim is fixed by settlement, rather than a jury determination, the total payment might not be sufficient, even including the compensation payments, to constitute double recovery. In other such cases that clearly would not be true. And in still others, jury awards being notoriously problematical, one could not be sure. The statute does not concern itself with this issue, but provides, flatly, that the insurer recovers its full payments, less its pro rata share of the costs, in every case.
 
 
 10
 The court conceded as much. In fact, it went further. In the subsequent Normand case, post, which raises this same issue, the court, after stating that "Liberty has acted arbitrarily and unreasonably in refusing to reduce its lien so as to effectuate a settlement," conceded,
 
 
 11
 "I can find no authority either in the Workmen's Compensation statute or in the cases that would enable me to order Liberty to reduce its lien by what I consider a reasonable amount."
 
 
 12
 Nonetheless, although it had no power to compel the insurer to reduce its claim, it proceeded to effect a reduction by charging more than its pro rata share of the costs of suit against the insurer for its failure to have done so voluntarily.
 
 
 13
 The insurer could not be punished for doing what it had a right to do. Del Rio points to the costs provisions in the statute which, after stating in paragraph I that the costs shall be apportioned pro rata, in paragraph IV, incorporated therein, empower the court to make such division "as justice may require." But if the insurer had no obligation to make a reduction, it was doing no more than standing on its rights. There was no injustice for the court to correct.
 
 
 14
 Nor can we accept Del Rio's argument that paragraph IV has no meaning if it is not applied as the court applied it. We think it has another, and clear, purpose. In any particular case the party in charge of the suit, whether the insurer or the employee, may have obligated itself to an excessive counsel fee, or have incurred unnecessary expenses. Or, an insurer might, without justification, put the suing employee to expense that otherwise could have been avoided, for example by refusing to make available information obtained as a result of its independent investigation. Conversely, a party might have contributed, without charge, something beneficial, for which it should be credited. The insurer, for example, might have furnished expert evidence. In any such case an exact pro rata apportionment would be unjust. The "justice" provision is to permit a fair adjustment of the expenses of suit; it is not a provision that allows the court to find unjust something that the statute expressly permits.
 
 
 15
 Apart from the statutory language, which we believe clear, we have another reason for rejecting the court's approach. A statute, if possible, should be interpreted to reach a result both rational and reasonably easy to apply. The court's interpretation would raise a host of problems in this regard. If the insurer is to be charged because it refuses to settle, the same reasoning should apply if it makes an offer, but the court believes it inadequate. In neither situation can we see a basis for charging it, as the court did, with the entire costs. But, in any event, devising a formula in any particular case would be far from easy. The case supposed in n.2, ante, is over-simplistic. For a personal injury, the damages are not fixed, but unliquidated, and juries are hard to predict. It is, at best, a difficult estimate to say by how much, percentage-wise, a settlement is a discount. Moreover, our hypothesized case assumed that the claim was reduced because of doubts about the defendant's liability. Alternatively, it may be reduced because of a likelihood that a jury would find that the injury was due to, or substantially contributed to by the employee's own fault. If consideration were not given to this in determining how much the insurer should contribute by way of waiver, we could have an employee who received workmen's compensation for an accident for which he was himself responsible, suing a third party who proves willing, nevertheless, to pay a modest amount, and then asking the carrier to waive a substantial portion of its lien because, due to his own fault, the settlement value of the case was small. This would mean that the greater the employee's own fault, the heavier is the burden on the carrier, and, in the long run, on the employer.
 
 
 16
 We do not believe the legislature intended that result, nor, on the other hand, intended to impose such imponderable difficulties on the court and parties. Del Rio's attempt to find support for the court's decision in the legislative history is ill-placed. If there is thought to be a suggestion of power in the court to effect substantive results by virtue of the phrase "as justice may require," it is to be noted that the specification for "pro rata" apportionment was enacted subsequently. This sequence confirms the fact that the court's duty is simply to make the pro rata apportionment fairly.
 
 
 17
 The case of Paul Normand followed some months later. The carrier and the employer were the same; the equipment involved in the injury was made by another manufacturer. Normand sued the manufacturer and, again, Liberty refused to reduce its lien. This resulted in a ruling by the court, while the settlement negotiations were in progress, that if the case was not settled and the jury found for the defendant, Liberty, because its refusal to improve the employee's settlement was "unreasonable and arbitrary," would be required to pay all of Normand's counsel fee and expenses. Not only was its lien to absorb the costs of suit, but if there was no recovery, and hence no lien, the insurer was to be under a cash obligation.[3]
 
 
 18
 Nothing in the statute imposes such affirmative obligation upon a workmen's compensation carrier. The situation never arose, because the third party action was thereafter settled. However, we mention it because this ruling may have been due in part to an additional factor in his case which Normand asserts as also supporting the full charge of the fee that completely wiped out the insurer's lien. The court concluded that Del Rio's accident should have alerted Liberty that Fibre ran a loose shop, with dangerous machinery. Hence, as against Normand, Liberty was negligent in failing to require Fibre to correct dangerous conditions.
 
 
 19
 Passing the fact that Liberty was condemned without trial, the court and Normand believe that Liberty's alleged omissions properly could be considered in deciding to charge it with all the costs, but neither cite supporting authority. We believe such a view to be at odds with the whole concept of workmen's compensation. As already stated, compensation is paid in the same amount, whether or not the employer was negligent. In a third party action under New Hamphire law, whether brought by the employee or in his name by the employer, the negligence of the employer also is not relevant. Bilodeau v. Oliver Stores, Inc., ante, 352 A.2d at 745; see 2A A. Larsen, Workmen's Compensation Law, §§ 75.22-.23 (1976). The carrier's negligence, even had it been properly established, is likewise immaterial to the carrier's right to its lien.
 
 
 20
 The court's orders and the judgments must be vacated. Since no reasons appear for doing otherwise, the cases are remanded for the entry of judgments reflecting a mathematical pro rata apportionment of the expenses of suit.
 
 
 
 [1]
 N.H. RSA 281:14 I provides:
 "I. When an injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in some person other than the employer, or the employer's insurance carrier, a legal liability to pay damages in respect thereto, the injured employee, in addition to the benefits of this chapter, may obtain damages from or proceed at law against such other person to recover damages; provided, however, that the employer, or the employer's insurance carrier, shall have a lien on the amount of damages recovered by the employee, less the expenses and costs of action, to the extent of the compensation, medical, hospital or other remedial care already paid, or agreed or awarded to be paid by the employer, or the employer's insurance carrier under this chapter, less the employer's, or the employer's insurance carrier's, pro rata share of expenses and costs of action as determined in Paragraph IV hereof."
 See Bilodeau v. Oliver Stores, Inc., 1976, 116 N.H. 83, 352 A.2d 741; Smith v. American Empl. Ins. Co., 1960, 102 N.H. 530, 163 A.2d 564.
 
 
 [2]
 To put the matter in round figures, suppose the fair value of the employee's damages were $100,000; that the insurer's lien was $20,000; that the costs of suit were $20,000, and that the case was settled for $50,000, because of doubt about the defendant's liability. Under the basic statutory scheme, the insurer's gross recovery would be $20,000 and the employee's $30,000, and if the cost of suit were divided pro rata, the insurer would bear 2/5ths, or $8,000 and the employee 3/5ths, or $12,000. Hence, the insurer would receive, net, $12,000 and the employee $18,000. If the insurer had a duty to contribute to the settlement, inasmuch as the case was being settled on a 50% basis, presumably the court would have felt its duty was to reduce its lien claim by 50%, or to $10,000, resulting in the employee's share being $40,000. Then, on a pro rata basis, the insurer would be charged with 1/5th of the cost of suit, or $4,000, and would receive, net, $6,000. Under the court's approach of charging the insurer with the entire costs because of its recalcitrance in not making a partial reduction, the insurer is entitled to its lien of $20,000, but is charged with all the costs, and so receives $20,000, less $20,000, or nothing. This is virtually what happened in the Del Rio case. It is precisely what happened in the Normand case, post, where the costs of suit exceeded the insurer's lien
 
 
 [3]
 The court left hanging the fact that plaintiff's counsel fee arrangement was contingent. Counsel was apparently in the catbird's seat. If plaintiff won, he would receive a percentage fee, the size of which we have always thought was justifiable only because of the risk that there might be none, but he was now to be paid in any event