**Patricia J. KOTHE, Plaintiff-Appellee,**

**v.**

**Dr. James W. SMITH, Dr. Andrew D. Kerr, Jr., M.D., P.C., and Andrew D. Kerr, Defendants,**

**Dr. James W. Smith, Defendant-Appellant.**

**No. 1230, Docket 85–7024.**

United States Court of Appeals, Second Circuit.

Argued May 22, 1985.

Decided Sept. 4, 1985.

Alan W. Clark, Levittown, N.Y. (Blume, Easton & Clark, Levittown, N.Y., of counsel), for plaintiff-appellee.

Michael F. Close, New York City (Roger P. McTiernan and Barry, McTiernan & Moore, New York City, of counsel), for defendants/defendant-appellant.

Before LUMBARD, VAN GRAAFEILAND and PIERCE, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Dr. James Smith appeals from a judgment of the United States District Court for the Southern District of New York (Sweet, J.), which directed him to pay $1,000 to plaintiff-appellee's attorney, $1,000 to plaintiff-appellee's medical witness, and $480 to the Clerk of the Court. For the reasons hereinafter discussed, we direct that the judgment be vacated.

Patricia Kothe brought this suit for medical malpractice against four defendants, Dr. Smith, Dr. Andrew Kerr, Dr. Kerr's professional corporation, and Doctors Hospital, seeking $2 million in damages. She discontinued her action against the hospital four months prior to trial. She discontinued against Dr. Kerr and his corporation on the opening day of trial.

Three weeks prior thereto, Judge Sweet held a pretrial conference, during which he directed counsel for the parties to conduct

settlement negotiations. Although it is not clear from the record, it appears that Judge Sweet recommended that the case be settled for between $20,000 and $30,000. He also warned the parties that, if they settled for a comparable figure after trial had begun, he would impose sanctions against the dilatory party. Smith, whose defense has been conducted throughout this litigation by his malpractice insurer, offered $5,000 on the day before trial, but it was rejected.

Although Kothe's attorney had indicated to Judge Sweet that his client would settle for $20,000, he had requested that the figure not be disclosed to Smith. Kothe's counsel conceded at oral argument that the lowest pretrial settlement demand communicated to Smith was $50,000. Nevertheless, when the case was settled for $20,000 after one day of trial, the district court proceeded to penalize Smith alone. In imposing the penalty, the court stated that it was "determined to get the attention of the carrier" and that "the carriers are going to have to wake up when a judge tells them that they want [sic] to settle a case and they don't want to settle it." Under the circumstances of this case, we believe that the district court's imposition of a penalty against Smith was an abuse of the sanction power given it by Fed.R.Civ.P. 16(f).

■ Although the law favors the voluntary settlement of civil suits, *ABKCO Music, Inc. v. Harrisongs Music, Ltd.,* 722 F.2d 988, 997 (2d Cir.1983), it does not sanction efforts by trial judges to effect settlements through coercion. *Del Rio v. Northern Blower Co.,* 574 F.2d 23, 26 (1st Cir.1978) (*citing Wolff v. Laverne, Inc.,* 17 A.D.2d 213, 233 N.Y.S.2d 555 (1962)); *see MacLeod v. D.C. Transit System, Inc.,* 283 F.2d 194, 195 n. 1 (D.C.Cir.1960); 89 C.J.S., Trial, § 577 at 355. In the *Wolff* case, cited with approval in *Del Rio, supra,* the Court said:

We view with disfavor all pressure tactics whether directly or obliquely, to coerce settlement by litigants and their counsel. Failure to concur in what the Justice presiding may consider an ade-

quate settlement should not result in an imposition upon a litigant or his counsel, who reject it, of any retributive sanctions not specifically authorized by law.

17 A.D.2d at 215, 233 N.Y.S.2d 555. In short, pressure tactics to coerce settlement simply are not permissible. *Schunk v. Schunk,* 84 A.D.2d 904, 905, 446 N.Y.S.2d 672 (1981); *Chomski v. Alston Cab Co.,* 32 A.D.2d 627, 299 N.Y.S.2d 896 (1969). "The judge must not compel agreement by arbitrary use of his power and the attorney must not meekly submit to a judge's suggestion, though it be strongly urged." *Brooks v. Great Atlantic & Pacific Tea Co.,* 92 F.2d 794, 796 (9th Cir.1937).

■ Rule 16 of the Fed.R.Civ.P. was not designed as a means for clubbing the parties—or one of them—into an involuntary compromise. *See Padovani v. Bruchhausen,* 293 F.2d 546, 548 (2d Cir.1961); Clark, *To An Understanding Use of Pre-Trial,* 1961, 29 F.R.D. 454, 456; Smith, *Pretrial Conference—A Study of Methods,* 1961, 29 F.R.D. 348, 353; Moskowitz, *Glimpses of Federal Trials and Procedure,* 1946, 4 F.R.D. 216, 218. Although subsection (c)(7) of Rule 16, added in the 1983 amendments of the Rule, was designed to encourage pretrial settlement discussions, it was not its purpose to "impose settlement negotiations on unwilling litigants." *See Advisory Committee Note,* 1983, 97 F.R.D. 205, 210.

■ We find the coercion in the instant case especially troublesome because the district court imposed sanctions on Smith alone. Offers to settle a claim are not made in a vacuum. They are part of a more complex process which includes "conferences, informal discussions, offers, counterdemands, more discussions, more haggling, and finally, in the great majority of cases, a compromise." J. & D. Sindell, *Let's Talk Settlement* 300 (1963). In other words, the process of settlement is a two-way street, and a defendant should not be expected to bid against himself. In the instant case, Smith never received a demand of less than $50,000. Having received no indication from Kothe that an

offer somewhere in the vicinity of $20,000 would at least be given careful consideration, Smith should not have been required to make an offer in this amount simply because the court wanted him to.

 Smith's attorney should not be condemned for changing his evaluation of the case after listening to Kothe's testimony during the first day of trial. As every experienced trial lawyer knows, the personalities of the parties and their witnesses play an important role in litigation. It is one thing to have a valid claim; it is quite another to convince a jury of this fact. It is not at all unusual, therefore, for a defendant to change his perception of a case based on the plaintiff's performance on the witness stand. We see nothing about that occurrence in the instant case that warranted the imposition of sanctions against the defendant alone.

Although we commend Judge Sweet for his efforts to encourage settlement negotiations, his excessive zeal leaves us no recourse but to remand the matter with instructions to vacate the judgment.