915 F.2d 1556
 Unpublished Disposition
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
CITIBANK, N.A., Plaintiff, Appellee,
v.
ACCOUNTING SYSTEMS OF P.R. INC. et al., Defendants, Appellants.
 No. 90-1145.
 United States Court of Appeals, First Circuit.
 Aug. 7, 1990.
 
 Appeal From The United States District Court For The District of Puerto Rico, Jaime Pieras, Jr., District Judge.
 Eudoro Balmaceda on brief, for appellants.
 Iris Y. Valentin-Juarbe and Rafael E. Garcia-Rodon on brief, for appellee.
 D.P.R.
 AFFIRMED.
 Before TORRUELLA, SELYA and CYR, Circuit Judges.
 PER CURIAM.
 
 
 1
 Appellants, Accounting Systems of Puerto Rico, Inc., Computer Forms and Systems, Inc., Antonio Aguilar, Clara Falero and their conjugal partnership, appeal from a consent judgment entered by the district court, pursuant to a settlement agreement reached between appellants and appellee, Citibank, N.A. Specifically, appellants object to the district court's allowance of their attorney's motion to withdraw from the case and the fact that, as a result, appellants proceeded with trial on a pro se basis. They also maintain that the settlement was invalid because the court coerced appellants into agreeing to it.
 
 I. BACKGROUND
 
 2
 The underlying merits of the case involve a claim for the foreclosure of a factor's lien contract and mortgage and the collection of monies. Appellants asserted a counterclaim for the violation of the duty of good faith and other such failures on appellee's part.
 
 
 3
 On May 17, 1989, a scheduling order was entered. It set October 27, 1989 as the pretrial conference date. The parties proceeded to conduct discovery. The pretrial conference was rescheduled for December 5, 1989 and the parties were ordered to complete discovery by the end of November. This order also noted that the parties should expect a prompt trial date before December 31, 1989. At the December 5 pretrial conference, a trial date of December 27 was chosen.
 
 
 4
 On December 26, 1989, the court called the parties into chambers for a settlement conference. At this time, appellants' attorney, Sastre, informed the court that he had received, on December 22, 1989, a fax letter from Aguilar. This letter implied that the attorneys were not working, informed them that appellants could not supply reports required for trial, indicated that a new attorney was willing to help with the case and asked that the case be postponed to allow the integration of the new attorney into the case. Aguilar also stated that as his wife, also a defendant, had had an anxiety attack when she heard of the December 27 trial date, the case be postponed for medical reasons.
 
 
 5
 Appellants' counsel informed the court that they had responded in a letter dated December 26, 1989. They stated in the letter that the new attorney had told them that he had no time for appellants' case and had, in fact, informed Aguilar that a continuance was unlikely and denied telling Aguilar that the scheduling was premature. The letter indicated that the case was ready for trial except for certain information appellants were to have supplied; this information had been requested of appellants since May 1989. The letter concluded by stating that appellants' lack of trust in their attorneys forced them to withdraw from representing appellants.
 
 
 6
 Sastre, after disclosing the above communications to the court, indicated that his firm desired to withdraw from representing appellants. The court concluded that perhaps appellants, and not their lawyers, did not wish to proceed with trial. Trial Transcript, Volume IV at 6; Appendix B to Appellee's Brief at 310. The judge stated the appellants' faxed letter did not justify a continuance of the case. Id. Appellant's attorney then told appellant what had occurred in chambers.
 
 
 7
 On December 27, 1989, appellee's lawyers informed the court that they were ready to proceed to trial. Santiago, another one of appellants' attorneys, stated that had it not been for Aguilar's problems with his firm, he too would have been ready to try the case. Appellants' counsel then filed their motion for withdrawal. The motion was discussed in open court and then allowed. Aguilar did not object to the motion of withdrawal. In fact, he had informed Santiago that he already had hired a new attorney. The court then proceeded with jury selection. When it came time to challenge jurors, Aguilar informed the court that his new attorney still had not arrived. When new counsel appeared, counsel informed the court that, in fact, he was not representing the appellants. The trial proceeded with Aguilar representing himself and the other appellants.
 
 
 8
 After a lunch recess, the district court judge called an additional settlement conference. Once back in court, the following exchange, outside the presence of the jury, took place:
 
 
 9
 THE COURT: The record should reflect that we had a settlement conference in chambers and I want to know what the answers to the proposals are, maybe more than one answer.
 
 
 10
 MR. GARCIA: The bank is willing to settle.
 
 
 11
 THE COURT: The bank is willing to settle. Mr. Aguilar? Are you willing to settle or not?
 
 
 12
 MR. AGUILAR: You mean settle everything with him? If I settle everything with him, you mean?
 
 
 13
 THE COURT: Yes. Are you going to settle the case or not?
 
 
 14
 MR. AGUILAR: I have no other choice.
 
 
 15
 THE COURT: Excuse me?
 
 
 16
 MR. AGUILAR: I have no other choice.
 
 
 17
 THE COURT: Well, you have a right to try your case. Nobody is forcing you.
 
 
 18
 MR. AGUILAR: But how am I going to win?
 
 
 19
 MR. GARCIA: We want to be clear. Nobody has forced him.
 
 
 20
 THE COURT: As a matter of fact, I intend to explain the settlement on the record, to make a record of this, in the event that a settlement is reached.
 
 
 21
 Are you willing to settle the case or not?
 
 
 22
 MR. AGUILAR: The way we just talk about.
 
 
 23
 THE COURT: $50,000 plus interest at one percent over prime until you pay, plus $16,500 in attorney's fees, plus the dismissal of the counterclaim.
 
 
 24
 MR. AGUILAR: Also the dismiss of the counterclaim.
 
 
 25
 THE COURT: Oh, yes.
 
 
 26
 MR. AGUILAR: And when I have to pay this $60,000?
 
 
 27
 THE COURT: The judgment amount you will have to pay 30 days after entry of judgment, or whenever the bank forces you to pay. If the bank decides not to collect, fine with me. If the bank decides to collect on the 31st day, they can collect on the 31st day.
 
 
 28
 Trial Transcript, Volume IV at 2-3; Appendix to Appellee's brief, Volume B at 306-07.
 
 
 29
 MR. GARCIA: Like you say, your Honor, final judgment today and 30 days to pay.
 
 
 30
 THE COURT: What do you have to say about that?
 
 
 31
 MR. AGUILAR: Well, I have to agree with that.
 
 
 32
 THE COURT: Do you agree?
 
 
 33
 MR. AGUILAR: What can I say?
 
 
 34
 MR. GARCIA: You don't have to agree. Do you agree?
 
 
 35
 THE COURT: You agree. That means you, the personal defendants, you, your wife, Accounting Systems of Puerto Rico, Inc., Computer Forms and Systems, Inc. You all agree? Is that so?
 
 
 36
 MR. GARCIA: You have to say it here.
 
 
 37
 MR. AGUILAR: Okay.
 
 
 38
 THE COURT: That is so.
 
 
 39
 Id. Trial Transcript at 4; Appendix at 308.
 
 
 40
 The court proceeded to outline its view of the facts to the parties. It expressed its belief that appellants did not have a strong case, that they had an obligation to the appellee for $50,000 (which appellants do not dispute) and were liable for attorney's fees of $108,000. Id. Trial Transcript at 7-10; Appendix at 311-14. The court also explained that appellants' exposure could be significantly higher. Id. The recommendation both parties were to consider was a consent judgment of $50,000 plus interest and attorney's fees of $16,500. Id. Trial Transcript at 10; Appendix at 314. The court then stated:
 
 
 41
 I am going to ask again. Is the bank in agreement with this, Mr. Garcia?
 
 
 42
 MR. GARCIA: Yes, your Honor.
 
 
 43
 THE COURT: Mr. Aguilar, are you in agreement?
 
 
 44
 MR. AGUILAR: Yes.
 
 Id. The court finally stated:
 
 45
 So this is the end of this case. The counterclaim is going to be dismissed also. And this judgment should be available for the parties to collect tomorrow morning, to get from the Clerk's Office tomorrow morning. No later than tomorrow morning, if not now.
 
 
 46
 Any doubt as to this? The bank?
 
 
 47
 MR. GARCIA: No, your Honor.
 
 
 48
 THE COURT: Mr. Aguilar?
 
 
 49
 MR. AGUILAR: No, your Honor.
 
 
 50
 THE COURT: So I will enter the judgment, and as I said before, the judgment is going to be firm and final now, but no execution will occur until 30 days from today.
 
 
 51
 Id. Trial Transcript at 12-13; Appendix, at 316-17.
 
 II. DISCUSSION
 
 52
 After carefully considering the record and briefs, we find that no substantial questions are presented by this appeal. We therefore summarily dispose of the case pursuant to Local Rule 27.1.
 
 
 53
 A. Withdrawal of Counsel.
 
 
 54
 The district court's allowance of appellants' counsels' motion to withdraw will not be disturbed absent abuse of discretion. See Culebras Enterprises Corp. v. Rivera-Rios, 846 F.2d 94, 97 (1st Cir.1988) (district court has duty to supervise attorneys appearing before it; district court's ruling reviewed only for abuse of discretion); Washington v. Sherwin Real Estate, Inc., 694 F.2d 1081, 1087 (7th Cir.1982). There is no doubt that there is no substantial question that the district court did not abuse its discretion in allowing appellants' counsel to withdraw.
 
 
 55
 First, Aguilar's faxed letter indicates dissatisfaction with his counsel, his unwillingness to cooperate with counsel's plans and states his intention of bringing in a new lawyer. In effect, Aguilar ignored his counsel's advice by not producing documents requested over six months before the trial date. Additionally, Aguilar expressed no objection to the withdrawal motion in court. See Washington, at 1088 (fact that parties did not object to their counsel's motion to withdraw is a "crucial" factor). In fact, Aguilar informed Santiago that he already had hired another attorney. Far from opposing the court's decision, Aguilar seemed to invite it. In their brief on appeal which cites no cases at all, appellants rely on two documents entitled "Statement Under Penalty of Perjury" to refute appellee's version of the events. These Statements were not part of the record below so cannot be considered on appeal. The only other argument appellants make is that a continuance should have been granted so that appellants could obtain new counsel. In support, they point out that such a procedure was followed in another case.
 
 
 56
 At no time did Aguilar object to being "forced" to proceed on his own, nor did he ask for a continuance. In the posture of this case, Aguilar is solely responsible for the position in which he found himself and the other appellants. There was no abuse of discretion in the district court's decision to proceed directly to trial. See Commercial Union Insurance Co. v. Gonzalez Rivera, 358 F.2d 480, 482 (1st Cir.1966) (court did not abuse its discretion in denying continuance when it advanced the trial date from July 20 to May 4); Washington, 694 F.2d at 1088 (an attorney's withdrawal does not give client an automatic right to a continuance; court did not abuse its discretion in requiring plaintiffs to proceed pro se ); Grunewald v. Missouri Pacific R.R. Co., 331 F.2d 983, 986 (8th Cir.1964) (refusal to grant a continuance and order dismissing case for want of prosecution was not an abuse of discretion).
 
 
 57
 B. Consent Judgment.
 
 
 58
 "Relief on appeal from a consent judgment is available only on a showing of either lack of actual consent, fraud in obtaining consent, lack of federal jurisdiction, or mistake." Coughlin v. Regan, 768 F.2d 468, 470 (1st Cir.1985). Appellant argues that since the parties were "diametrically opposed" there was not even a "remote possibility" of a settlement. He maintains that the judge "imposed" the terms of the settlement on the parties and that the parties never entered into direct negotiations. Again, to support his allegations, appellant refers this court only to his Statement Under Perjury. This document is not a part of the record. However, in it, he states that the judge's view that appellant was liable for approximately $108,000 in attorney's fees pressured appellant into settling the action. Otherwise, he claims, he would have not agreed to the terms of the settlement. We do not believe that there is a substantial question concerning the validity of the consent judgment. Although the record shows that Aguilar was reluctant to settle and that he expressed a view that he had no other choice, he was not "forced" into agreeing to a settlement. The district court judge did not threaten Aguilar with sanctions nor indicate that any negative judicially imposed consequences would follow should Aguilar not agree to the settlement terms.
 
 
 59
 For example, in Kothe v. Smith, 771 F.2d 667 (2d Cir.1985) the Court of Appeals for the Second Circuit vacated a consent judgment. The district court judge had directed counsel for the parties to enter into settlement negotiations. The judge recommended that the case be settled for between $20,000 and $30,000. He also stated that, should the parties settle for a comparable amount during trial, he would impose sanctions against the "dilatory party." Id. at 699. When the case settled for $20,000, after one day of trial, the district court proceeded to penalize the "dilatory" attorney.
 
 
 60
 On appeal, the court held that a trial judge may not effect settlements through coercion. Id. A judge must not " 'compel agreement by arbitrary use of his power....' " Id. (quoting Brooks v. Great Atlantic & Pacific Tea Co., 92 F.2d 794, 796 (9th Cir.1937)); Del Rio v. Northern Blower Co., 574 F.2d 23, 25-26 (1st Cir.1978) (where workmen's compensation carrier refused to reduce its lien on any recovery the injured workman received in his suit against manufacturer of allegedly defective machinery, and case was settled, court erred in charging entire cost of suit against carrier's lien, especially when carrier had no duty to agree to reduce its lien).
 
 
 61
 Here, the judge did no more than state his views of the facts of the case. He did not threaten Aguilar, either directly or indirectly, with any type of sanctions if settlement were not reached. The fact that Aguilar, had he not agreed to settle, would have to proceed with trial on a pro se basis is not the type of coercion contemplated by the above cases. Aguilar's pro se status was brought about by his own actions; the court, as held above, did not err in allowing Aguilar's counsel to withdraw from the action nor is there any evidence that the allowance of withdrawal was made with the purpose of coercing appellants into settling. In these circumstances, we find that Aguilar has not demonstrated that his consent was not "actual." See Coughlin, 768 F.2d at 470. In the absence of any allegations of fraud, mistake or lack of federal jurisdiction, the consent judgment is valid.
 
 
 62
 The judgment of the district court is summarily affirmed pursuant to Local Rule 27.1.