**G. HEILEMAN BREWING CO., INC.,**
**Plaintiff–Appellee,**

v.

**JOSEPH OAT CORPORATION,**
**Defendant–Appellant.**

**No. 86–3118.**

United States Court of Appeals,
Seventh Circuit.

Argued May 20, 1987.

Rehearing En Banc Sept. 27, 1988.

Decided March 27, 1989.

Carroll Metzner, Bell, Metzner & Gierhart, S.C., Madison, Wis., for defendant-appellant.

Richard S. Florsheim, Thomas L. Shriner, Jr., Foley & Lardner, Milwaukee, Wis., for plaintiff-appellee.

Before BAUER, Chief Judge, CUMMINGS, WOOD, Jr., CUDAHY, POSNER, COFFEY, FLAUM, EASTERBROOK, RIPPLE, MANION and KANNE, Circuit Judges.

KANNE, Circuit Judge.

May a federal district court order litigants—even those represented by counsel—to appear before it in person at a pretrial conference for the purpose of discussing the posture and settlement of the litigants' case? After reviewing the Federal Rules of Civil Procedure and federal district courts' inherent authority to manage and control the litigation before them, we answer this question in the affirmative and conclude that a district court may sanction a litigant for failing to comply with such an order.

## I. BACKGROUND

A federal magistrate ordered Joseph Oat Corporation to send a "corporate representative with authority to settle" to a pretrial conference to discuss disputed factual and legal issues and the possibility of settlement. Although counsel for Oat Corporation appeared, accompanied by another attorney who was authorized to speak on behalf of the principals of the corporation, no principal or corporate representative personally attended the conference. The court determined that the failure of Oat Corporation to send a principal of the corporation to the pretrial conference violated its order. Consequently, the district court imposed a sanction of $5,860.01 upon Oat Corporation pursuant to Federal Rule of Civil Procedure 16(f). This amount represented the costs and attorneys' fees of the opposing parties attending the conference.

## II. THE APPEAL

Oat Corporation appeals, claiming that the district court did not have the authority to order litigants represented by counsel to appear at the pretrial settlement conference. Specifically, Oat Corporation contends that, by negative implication, the language of Rule 16(a)(5) prohibits a district court from directing represented litigants to attend pretrial conferences.[1] That is, because Rule 16 expressly refers to "attorneys for the parties and any unrepresented parties" in introductory paragraph (a), a district court may not go beyond that language to devise procedures which direct the pretrial appearance of parties represented by counsel. Consequently, Oat Corporation concludes that the court lacked the authority to order the pretrial attendance of its corporate representatives and, even if the court possessed such authority, the court abused its discretion to exercise that power in this case. Finally, Oat Corporation argues that the court abused its discretion to enter sanctions.

### A. Authority to Order Attendance

First, we must address Oat Corporation's contention that a federal district court lacks the authority to order litigants who are represented by counsel to appear at a pretrial conference. Our analysis requires us to review the Federal Rules of Civil Procedure and district courts' inherent authority to manage the progress of litigation.

Rule 16 addresses the use of pretrial conferences to formulate and narrow issues for trial as well as to discuss means for dispensing with the need for costly and unnecessary litigation. As we stated in *Link v. Wabash R.R.*, 291 F.2d 542, 547 (7th Cir.1961), *aff'd*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962):

Pre-trial procedure has become an integrated part of the judicial process on the

---

1. Rule 16(a)(5) provides:

    (a) *Pretrial Conferences; Objectives.* In any action, the court may in its discretion direct the attorneys for the parties and any unrepresented parties to appear before it for a conference or conferences before trial for such purposes as

    . . . .

    (5) facilitating the settlement of the case. Fed.R.Civ.P. 16(a)(5).

trial level. Courts must be free to use it and to control and enforce its operation. Otherwise, the orderly administration of justice will be removed from control of the trial court and placed in the hands of counsel. We do not believe such a course is within the contemplation of the law.

The pretrial settlement of litigation has been advocated and used as a means to alleviate overcrowded dockets, and courts have practiced numerous and varied types of pretrial settlement techniques for many years. *See, e.g.,* Manual for Complex Litigation 2d, §§ 21.1–21.4 (1985); Federal Judicial Center, *Settlement Strategies for Federal District Judges* (1988); Federal Judicial Center, *The Judge's Role in the Settlement of Civil Suits* (1977) (presented at a seminar for newly-appointed judges); Federal Judicial Center, *The Role of the Judge in the Settlement Process* (1977). Since 1983, Rule 16 has expressly provided that settlement of a case is one of several subjects which should be pursued and discussed vigorously during pretrial conferences.[2]

■ The language of Rule 16 does not give any direction to the district court upon the issue of a court's authority to order litigants who are represented by counsel to appear for pretrial proceedings. Instead, Rule 16 merely refers to the participation of trial advocates—attorneys of record and *pro se* litigants. However, the Federal

Rules of Civil Procedure do not completely describe and limit the power of the federal courts. *HMG Property Investors, Inc. v. Parque Indus. Rio Canas, Inc.,* 847 F.2d 908, 915 (1st Cir.1988) (citations omitted).

The concept that district courts exercise procedural authority outside the explicit language of the rules of civil procedure is not frequently documented, but valid nevertheless. *Brockton Sav. Bank v. Pete, Marwick, Mitchell & Co.,* 771 F.2d 5, 11 (1st Cir.1985), *cert. denied,* 475 U.S. 1018, 106 S.Ct. 1204, 89 L.Ed.2d 317 (1986). The Supreme Court has acknowledged that the provisions of the Federal Rules of Civil Procedure are not intended to be the exclusive authority for actions to be taken by district courts. *Link v. Wabash R.R.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).

In *Link,* the Supreme Court noted that a district court's ability to take action in a procedural context may be grounded in " 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." 370 U.S. at 630–31, 82 S.Ct. at 1389 (footnotes omitted).[3] This authority likewise forms the basis for continued development of procedural techniques designed to make the operation of the court more efficient, to preserve the integrity of the judicial process, and to control courts' dockets.[4] Because the rules

---

**2.** Rule 16(c)(7) states:

(c) *Subjects to be Discussed at Pretrial Conferences.* The participants at any conference under this rule may consider and take action with respect to

. . . .

(7) the possibility of settlement or the use of extrajudicial procedures to resolve the dispute; . . . .

Fed.R.Civ.P. 16(c)(7).

**3.** The Supreme Court has long held that "the inherent powers of federal courts are those which 'are necessary to the exercise of all others.' " *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (quoting *United States v. Hudson & Goodwin,* 7 Cranch 32, 34, 11 U.S. 32, 3 L.Ed. 259 (1812)).

**4.** *See Newman–Green, Inc. v. Alfonzo–Larrain R.,* 854 F.2d 916, 921–22 (7th Cir.1988) (en banc)

(court discussing examples of specific procedures, such as the power to punish for contempt, power to sanction persons who file frivolous pleadings, power to determine whether there is jurisdiction), *cert. granted,* —— U.S. ——, 109 S.Ct. 781, 102 L.Ed.2d 773; *Strandell v. Jackson County,* 838 F.2d 884, 886 (7th Cir.1988); *Thompson v. Housing Auth. of Los Angeles,* 782 F.2d 829, 831 (9th Cir.), *cert. denied,* 479 U.S. 829, 107 S.Ct. 112, 93 L.Ed.2d 60 (1986); *Halaco Eng'g Co. v. Costle,* 843 F.2d 376, 380 (9th Cir. 1988) (court stating that the Supreme Court has recognized that a district court has inherent authority to impose sanctions for discovery abuses which may not be a technical violation of discovery rules).

The practice of some district judges requiring represented parties to appear in person (or by corporate representative) has been part and parcel of such settlement conferences for many years. *See In re LaMarre,* 494 F.2d 753, 756 (6th

form and shape certain aspects of a court's inherent powers, yet allow the continued exercise of that power where discretion should be available, the mere absence of language in the federal rules specifically authorizing or describing a particular judicial procedure should not, and does not, give rise to a negative implication of prohibition. *See Link,* 370 U.S. at 629–30, 82 S.Ct. at 1388;[5] *see also* Fed.R.Civ.P. 83 ("In all cases not provided for by rule, the district judges and magistrates may regulate their practice in any manner not inconsistent with these rules or those of the district in which they act.").

■ Obviously, the district court, in devising means to control cases before it, may not exercise its inherent authority in a manner inconsistent with rule or statute. As we stated in *Strandell v. Jackson County,* 838 F.2d 884, 886 (7th Cir.1988), such power should "be exercised in a manner that is in harmony with the Federal Rules of Civil Procedure." This means that "where the rules directly mandate a specific procedure *to the exclusion of others,* inherent authority is proscribed." *Landau & Cleary, Ltd. v. Hribar Trucking, Inc.,* 867 F.2d 996, 1002 (7th Cir.1989) (emphasis added).

In this case, we are required to determine whether a court's power to order the pretrial appearance of litigants who are represented by counsel is inconsistent with, or in derogation of, Rule 16. We must remember that Rule 1 states, with unmistakable clarity, that the Federal Rules of Civil Procedure "shall be construed to secure the just, speedy, and inexpensive determination of every action." This language explicitly indicates that the federal rules are to be liberally construed. *Cf. Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947). There

is no place in the federal civil procedural system for the proposition that rules having the force of statute, though in derogation of the common law, are to be strictly construed. C. Wright & A. Miller, Federal Practice and Procedure: *Civil 2d* § 1029 (1987).

"[The] spirit, intent, and purpose [of Rule 16] is ... broadly remedial, allowing courts to actively manage the preparation of cases for trial." *In re Baker,* 744 F.2d 1438, 1440 (10th Cir.1984) (en banc), *cert. denied,* 471 U.S. 1014, 105 S.Ct. 2016, 85 L.Ed.2d 299 (1985). Rule 16 is not designed as a device to restrict or limit the authority of the district judge in the conduct of pretrial conferences. As the Tenth Circuit Court of Appeals sitting *en banc* stated in *Baker,* "the spirit and purpose of the amendments to Rule 16 always have been within the inherent power of the courts to manage their affairs as an independent constitutional branch of government." *Id.* at 1441 (citations omitted).

■ We agree with this interpretation of Rule 16. The wording of the rule and the accompanying commentary make plain that the entire thrust of the amendment to Rule 16 was to urge judges to make wider use of their powers and to manage actively their dockets from an early stage. We therefore conclude that our interpretation of Rule 16 to allow district courts to order represented parties to appear at pretrial settlement conferences merely represents another application of a district judge's inherent authority to preserve the efficiency, and more importantly the integrity, of the judicial process.

To summarize, we simply hold that the action taken by the district court in this case constituted the proper use of inherent authority to aid in accomplishing the pur-

Cir.1974) (court stating that it is well within the scope of a district court's authority to compel the appearance of a party's insurer at a pretrial conference and to enforce the order).

5. In *Link,* plaintiff's counsel, who was aware of a pretrial conference, deliberately failed to attend the conference. The district court dismissed the suit even though the Federal Rules of Civil Procedure did not expressly provide for it. Our court recognized the district court's inher-

ent authority to do so and found that it was not an abuse of discretion to dismiss the lawsuit. "Courts may exercise their inherent powers and invoke dismissal as a sanction in situations involving disregard by parties of orders, rules, or settings." *Link,* 291 F.2d at 546 (citations omitted). The Supreme Court affirmed this rationale. *Link,* 370 U.S. at 627, 82 S.Ct. at 1387, 8 L.Ed.2d 734 (1962).

pose and intent of Rule 16. We reaffirm the notion that the inherent power of a district judge—derived from the very nature and existence of his judicial office—is the broad field over which the Federal Rules of Civil Procedure are applied.[6] Inherent authority remains the means by which district judges deal with circumstances not proscribed or specifically addressed by rule or statute, but which must be addressed to promote the just, speedy, and inexpensive determination of every action.

### B. Exercise of Authority to Order Attendance

Having determined that the district court possessed the power and authority to order the represented litigants to appear at the pretrial settlement conference,[7] we now must examine whether the court abused its discretion to issue such an order.

■■■■ At the outset, it is important to note that a district court cannot coerce settlement. *Kothe v. Smith*, 771 F.2d 667, 669 (2d Cir.1985).[8] In this case, considerable concern has been generated because the court ordered "corporate representatives with authority to settle" to attend the conference. In our view, "authority to settle," when used in the context of this case, means that the "corporate representative" attending the pretrial conference was required to hold a position within the corporate entity allowing him to speak definitively and to commit the corporation to a particular position in the litigation. We do not view "authority to settle" as a requirement that corporate representatives must come to court willing to settle on someone else's terms, but only that they come to

court in order to consider the possibility of settlement.

As Chief Judge Crabb set forth in her decision which we now review:

> There is no indication ... that the magistrate's order contemplated requiring Joseph Oat ... to agree to any particular form of settlement or even to agree to settlement at all. The only requirement imposed by the magistrate was that the representative [of Oat Corporation] be present with full authority to settle, should terms for settlement be proposed that were acceptable to [Oat Corporation].

*G. Heileman Brewing Co., Inc. v. Joseph Oat Corporation*, 107 F.R.D. 275, 276–77 (1985).

If this case represented a situation where Oat Corporation had sent a corporate representative and was sanctioned because that person refused to make an offer to pay money—that is, refused to submit to settlement coercion—we would be faced with a decidely different issue—a situation we would not countenance.

The Advisory Committee Notes to Rule 16 state that "[a]lthough it is not the purpose of Rule 16(b)(7) to impose settlement negotiations on unwilling litigants, it is believed that providing a neutral forum for discussing [settlement] might foster it." Fed.R.Civ.P. 16 advisory committee's note, subdivision (c) (1983). These Notes clearly draw a distinction between being required to attend a settlement conference and being required to participate in settlement negotiations. Thus, under the scheme of pretrial settlement conferences, the corporate representative remains free, on behalf of the corporate entity, to propose terms of

---

6. The Federal Rules of Civil Procedure are not the only set of rules grounded in the district courts' inherent authority. Circumstances not explicitly authorized in the Federal Rules of Evidence such as *in limine* rulings are derived from the district court's inherent authority to manage the course of trials. *See Luce v. United States*, 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 463 n. 4, 83 L.Ed.2d 443 (1984) (citations omitted).

7. The district court had authorized the magistrate to resolve all pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A).

8. Likewise, a court cannot compel parties to stipulate to facts. *J.F. Edwards Constr. Co. v. Anderson Safeway Guard Rail Corp.*, 542 F.2d 1318 (7th Cir.1976) (per curiam). Nor can a court compel litigants to participate in a nonbinding summary jury trial. *Strandell*, 838 F.2d at 887. In the same vein, a court cannot force a party to engage in discovery. *Identiseal Corp. v. Positive Identification Sys., Inc.*, 560 F.2d 298 (7th Cir.1977).

settlement independently—but he may be required to state those terms in a pretrial conference before a judge or magistrate.

■ As an alternative position, Oat Corporation argues that the court abused its discretion to order corporate representatives of the litigants to attend the pretrial settlement conference. Oat Corporation determined that because its business was a "going concern":

> It would be unreasonable for the magistrate to require the president of that corporation to leave his business [in Camden, New Jersey] to travel to Madison, Wisconsin, to participate in a settlement conference. The expense and burden on the part of Joseph Oat to comply with this order was clearly unreasonable.

Consequently, Oat Corporation believes that the district court abused its authority.

We recognize, as did the district court, that circumstances could arise in which requiring a corporate representative (or any litigant) to appear at a pretrial settlement conference would be so onerous, so clearly unproductive, or so expensive in relation to the size, value, and complexity of the case that it might be an abuse of discretion. Moreover, "[b]ecause inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (citation omitted). However, the facts and circumstances of this case clearly support the court's actions to require the corporate representatives of the litigants to attend the pretrial conference personally.

This litigation involved a claim for $4 million—a claim which turned upon the resolution of complex factual and legal issues.[9] The litigants expected the trial to last from one to three months and all parties stood to incur substantial legal fees and trial expenses. This trial also would have preempted a large segment of judicial time—not an insignificant factor. Thus, because the stakes were high, we do not believe that the burden of requiring a corporate representative to attend a pretrial settlement conference was out of proportion to the benefits to be gained, not only by the litigants but also by the court.

Additionally, the corporation did send an attorney, Mr. Fitzpatrick, from Philadelphia, Pennsylvania to Madison, Wisconsin to "speak for" the principals of the corporation. It is difficult to see how the expenses involved in sending Mr. Fitzpatrick from Philadelphia to Madison would have greatly exceeded the expenses involved in sending a corporate representative from Camden to Madison. Consequently, we do not think the expenses and distance to be traveled are unreasonable in this case.

Furthermore, no objection to the magistrate's order was made prior to the date the pretrial conference resumed. Oat Corporation contacted the magistrate's office concerning the order's requirements and was advised of the requirements now at issue. However, Oat Corporation never objected to its terms, either when it was issued or when Oat Corporation sought clarification. Consequently, Oat Corporation was left with only one course of action: it had to comply fully with the letter *and*

---

**9.** G. Heileman Brewing Company hired RME Associates, Inc., a consulting firm, to build a waste water treatment plant at Heileman's brewery in LaCrosse, Wisconsin. Subsequently, RME entered into a contract with Joseph Oat Corporation whereby Oat Corporation agreed to design, engineer, construct and test the system. Oat Corporation was the exclusive licensee in the United States for the system's developer, N.V. Centrale Suicker Maatschappij (CSM), a Dutch corporation.

A contract dispute arose between Oat Corporation, Heileman, and RME involving the malfunctioning of the waste water treatment system. In December, 1982, Oat Corporation initi-

ated federal diversity litigation against Heileman and RME in New Jersey. RME counterclaimed. The case was transferred to the court below. RME then joined CSM as a third-party defendant. On the same day, Heileman filed an action in Wisconsin state court against Oat Corporation and RME. RME cross-claimed against Oat Corporation and counter-claimed against Heileman.

In the early phase of trial preparation, Heileman and Oat Corporation agreed to withdraw all claims between them. In addition, Oat Corporation dismissed its complaint against RME. After these events, the lawsuit consisted of RME's claims against Oat Corporation and CSM.

intent of the order and argue about its reasonableness later.[10]

We thus conclude that the court did not abuse its authority and discretion to order a representative of the Oat Corporation to appear for the pretrial settlement conference on December 19.

### C. Sanctions

Finally, we must determine whether the court abused its discretion by sanctioning Oat Corporation for failing to comply with the order to appear at the pretrial settlement conference. Oat Corporation argues that the instructions directing the appearance of corporate representatives were unclear and ambiguous. Consequently, it concludes that the sanctions were improper.

■ Absent an abuse of discretion, we may not disturb a district court's imposition of sanctions for failure of a party to comply with a pretrial order. The issue on review is not whether we would have imposed these costs upon Oat Corporation, but whether the district court abused its discretion in doing so. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976) (citations omitted).

■ Oat Corporation contends that the presence of Mr. Fitzpatrick, as an attorney authorized to speak on behalf of the principals of Oat Corporation, satisfied the requirement that its "corporate representative" attend the December 19 settlement conference. Oat Corporation argues that nothing in either the November 19, 1984 order or the December 14, 1984 order would lead a reasonable person to conclude that a representative or principal from the Joseph Oat Corporation was required to attend the conference personally—in effect arguing that sanctions cannot be imposed because the order failed to require a particular person to attend the conference.

We believe that Oat Corporation was well aware of what the court expected. While the November order may have been somewhat ambiguous, any ambiguity was eliminated by the magistrate's remarks from the bench on December 14, the written order of December 18,[11] and the direction obtained by counsel from the magistrate's clerk.

On December 14, in the presence of Oat Corporation's attorney of record and all those in the courtroom, the magistrate announced that the pretrial conference had

---

**10.** In *Malone v. United States Postal Serv.*, 833 F.2d 128 (9th Cir.1987), *cert. denied,* —— U.S. ——, 109 S.Ct. 59, 102 L.Ed.2d 37 (1988), the Ninth Circuit addressed the same general issue we confront here. Malone appealed the imposition of the sanction of dismissal. Malone argued that the pretrial order was invalid and thus her noncompliance was justified. *Id.* at 133. Specifically, Malone claimed that the order of dismissal was erroneous since the court lacked the authority to require Malone to supply a list of questions and answers for all potential witnesses. The Ninth Circuit Court of Appeals disagreed with Malone's argument and held that counsel who believes a court order to be erroneous is not relieved of the duty to obey it. Malone's refusal to abide with the pretrial order was not justified. *Id.; see also Maness v. Meyers,* 419 U.S. 449, 458, 95 S.Ct. 584, 591, 42 L.Ed.2d 574 (1975).

**11.** On December 18, 1984, the oral order was reduced to writing.
It stated:
The progress of the conference was impaired by the fact that neither plaintiff Joseph Oat Corporation, or its carrier National Union, was represented, in addition to counsel, by a representative having full authority to settle the case....

It appearing that a substantial possibility exists that a number of the claims and issues in these cases may be susceptible of settlement, and that other related matters might be considered (including the avoidance of unnecessary proof, cumulative evidence, and redundant litigation; the possibility of adopting amendments to the pleadings, the restructuring of the parties; and the adoption of special procedures for managing this complex and protracted litigation) so as to secure the just and speedy determination of this litigation as the least expense to the parties,
IT IS HEREBY ORDERED:
....
2. In addition to counsel, each party and the insurance carriers of plaintiff Oat and defendant RME, shall be represented at the conference in person by a representative having full *authority to settle the case or to make decisions and grant authority to counsel with respect to all matters that may be reasonably anticipated to come before the conference;* ....
(Order of Dec. 18, 1984) (emphasis supplied).

been impaired because Oat Corporation [12] had not complied with Paragraph 5(c) of the November order requiring it to send to the conference a corporate representative.[13] The magistrate clearly stated that the order's purpose was to insure the presence of the parties personally at the conference. From that moment on, Oat Corporation had notice that it was ordered to send a corporate representative to the resumed conference. Moreover, prior to the December 19 conference, Oat Corporation's counsel contacted the magistrate's office to determine if the magistrate really intended for corporate representatives to be in Madison, Wisconsin, for the settlement conference. Counsel was assured that such was the case.

When the conference resumed on December 19, Mr. Possi was present acting in his capacity as Oat Corporation's attorney of record. Mr. Fitzpatrick, who was not an attorney of record in the case, asserted that he was directed to attend the conference and speak on behalf of Oat Corporation's principals.[14] Mr. Fitzpatrick also stated that he interpreted the November order not as requiring the presence of a principal of Oat Corporation at the conference scheduled for December 14, but as

requiring the presence of the insurance carriers with authority to discuss settlement.

The distinction is clearly drawn between an attorney representing a corporation and a corporate representative. As we define in this opinion—consistent with the meaning given by the magistrate—a corporate representative is a person holding "a position with the corporate entity." Although Mr. Fitzpatrick was representing the corporate principals and Mr. Possi the corporation, no corporate representative attended as required by the magistrate's order. We therefore conclude that the court properly sanctioned Oat Corporation pursuant to Rule 16(f) for failing to send a corporate representative to the settlement conference.

## III. CONCLUSION

We hold that Rule 16 does not limit, but rather is enhanced by, the inherent authority of federal courts to order litigants represented by counsel to attend pretrial conferences for the purpose of discussing settlement. Oat Corporation violated the district court's order requiring it to have a corporate representative attend the pretrial set-

---

**12.** Except for the Oat Corporation, all the parties complied, sending their counsel and corporate representatives to the pretrial conference (a principal of CSM was standing by a telephone in the Netherlands). The Oat Corporation was represented by his attorney of record, John Possi. In addition, the Oat Corporation's liability insurance carrier, National Union Fire Insurance Company, was represented by an adjuster.

**13.** In pertinent part, the order stated:
> 5. A settlement conference, which shall include the Heileman Brewing Company, shall be held herein on December 14, 1984 at 2:00 p.m.....
>
> In addition to counsel, each party shall be represented at the conference by a representative having full authority to settle the case.... (Order of Nov. 19, 1984).

**14.** On December 19, the following dialogue took place between the magistrate and Mr. Fitzpatrick:
> THE COURT: I made it clear on December 14th, that for purposes of this conference ... that each party in addition to be represented by counsel would have present the party itself for purposes of authorizing or discussing set-

tlement in this case, speaking specifically about the order which is dated December 18th but was entered I think clearly enough on the 14th. That in addition to counsel, each party ... shall be represented at the conference in person by a representative having full authority to settle the case or make decisions relevant to all matters reasonably anticipated to come before the conference....
> As a matter of fact, Mr. Possi called yesterday to find out from my secretary if that is what I really meant ... he was informed that it is what I really meant; and I would like to have your explanation as to why no one from Joseph Oat is here from [sic] that authority.
> MR. FITZPATRICK: I am here as a representative of Joseph Oat which I understood your order to be. I have discussed this thing thoroughly with the principals of Joseph Oat. They directed me to come to the conference. They directed me that I could speak for them, with authority to speak for them. Their direction was I should make no offer to settle the case. That is their position. That is the position they choose to take and they designated me as the representative to communicate that to the Court.
> (Transcript of Dec. 19, 1984).

tlement conference on December 19, 1984. Under these circumstances, the district court did not abuse its discretion by imposing sanctions for Oat Corporation's failure to comply with the pretrial order. The judgment of the district court is hereby AFFIRMED.

POSNER, Circuit Judge, dissenting.

Rule 16(a) of the Federal Rules of Civil Procedure authorizes a district court to "direct the attorneys for the parties and any *unrepresented* parties to appear before it for a [pretrial] conference." The word I have italicized could be thought to carry the negative implication that no *represented* party may be directed to appear—that was the panel's conclusion—but I hesitate to so conclude in a case that can be decided on a narrower ground.

The main purpose of the pretrial conference is to get ready for trial. For that purpose, only the attorneys need be present, unless a party is acting as his own attorney. The only possible reason for wanting a represented party to be present is to enable the judge or magistrate to explore settlement with the principals rather than with just their agents. Some district judges and magistrates distrust the willingness or ability of attorneys to convey to their clients adequate information bearing on the desirability and terms of settling a case in lieu of pressing forward to trial. The distrust is warranted in some cases, I am sure; but warranted or not, it is what lies behind the concern that the panel opinion had stripped the district courts of a valuable settlement tool—and this at a time of heavy, and growing, federal judicial caseloads. The concern may well be exaggerated, however. The panel opinion may have had little practical significance; it is the rare attorney who will invite a district judge's displeasure by defying a request to produce the client for a pretrial conference.

The question of the district court's power to summon a represented party to a settlement conference is a difficult one. On the one hand, nothing in Rule 16 or in any other rule or statute confers such a power, and there are obvious dangers in too broad an interpretation of the federal courts' inherent power to regulate their procedure. One danger is that it encourages judicial high-handedness ("power corrupts"); several years ago one of the district judges in this circuit ordered Acting Secretary of Labor Brock to appear before him for settlement discussions on the very day Brock was scheduled to appear before the Senate for his confirmation hearing. The broader concern illustrated by the Brock episode is that in their zeal to settle cases judges may ignore the value of other people's time. One reason people hire lawyers is to economize on their own investment of time in resolving disputes. It is pertinent to note in this connection that Oat is a defendant in this case; it didn't *want* its executives' time occupied with this litigation.

On the other hand, *die Not bricht Eisen* ["necessity breaks iron"]. Attorneys often are imperfect agents of their clients, and the workload of our district courts is so heavy that we should hesitate to deprive them of a potentially useful tool for effecting settlement, even if there is some difficulty in finding a legal basis for the tool. Although few attorneys will defy a district court's request to produce the client, those few cases may be the very ones where the client's presence would be most conducive to settlement. If I am right that Rule 16(a) empowers a district court to summon unrepresented parties to a pretrial conference only because their presence may be necessary to get ready for trial, we need not infer that the draftsmen meant to forbid the summoning of represented parties for purposes of exploring settlement. The draftsmen may have been unaware that district courts were asserting a power to command the presence of a represented party to explore settlement. We should hesitate to infer inadvertent prohibitions.

The narrowly "legal" considerations bearing on the question whether district courts have the power asserted by the magistrate in this case are sufficiently equivocal to authorize—indeed compel—us to consider the practical consequences for settlement before deciding what the answer should be. Unfortunately we have

insufficient information about those consequences to be able to give a confident answer, but fortunately we need not answer the question in *this* case—so clear is it that the magistrate abused his discretion, which is to say, acted unreasonably, in demanding that Oat Corporation send an executive having "full settlement authority" to the pretrial conference. This demand, which is different from a demand that a party who has not closed the door to settlement send an executive to discuss possible terms, would be defensible only if litigants had a duty to bargain in good faith over settlement before resorting to trial, and neither Rule 16 nor any other rule, statute, or doctrine imposes such a duty on federal litigants. See *Strandell v. Jackson County*, 838 F.2d 884, 887 (7th Cir.1987); *Kothe v. Smith*, 771 F.2d 667, 669 (2d Cir.1985); *Del Rio v. Northern Blower Co.*, 574 F.2d 23, 26 (1st Cir.1978); *Perez v. Maine*, 760 F.2d 11, 12 (1st Cir.1985); *National Ass'n of Government Employees, Inc. v. National Federation of Federal Employees*, 844 F.2d 216, 223 (5th Cir.1988); Advisory Committee Notes to 1983 Amendments to Fed. R.Civ.P. 16. There is no federal judicial power to coerce settlement. Oat had made clear that it was not prepared to settle the case on any terms that required it to pay money. That was its prerogative, which once exercised made the magistrate's continued insistence on Oat's sending an executive to Madison arbitrary, unreasonable, willful, and indeed petulant. This is apart from the fact that since no one officer of Oat may have had authority to settle the case, compliance with the demand might have required Oat to ship its entire board of directors to Madison. Ultimately Oat did make a money settlement, but there is no indication that it would have settled sooner if only it had complied with the magistrate's demand for the dispatch of an executive possessing "full settlement authority."

Sufficient unto the day is the evil thereof: We should reverse the district court without reaching the question whether there are any circumstances in which a district court may compel a party represented by counsel to attend a pretrial conference.

COFFEY, Circuit Judge, with whom EASTERBROOK, RIPPLE and MANION, Circuit Judges, join, dissenting.

Because Rule 16 of the Federal Rules of Civil Procedure, amended by the Supreme Court and Congress as recently as 1983, specifically designates who may be ordered to appear at a pretrial conference, I disagree with the majority's determination "that the action taken by the district court in this case constituted the proper use of inherent authority to aid in accomplishing the purpose and intent of Rule 16." Majority Opinion at 652. Rule 16 of the Federal Rules of Civil Procedure states in relevant part:

> "(a) Pretrial Conferences; Objectives. In any action, the court may in its discretion direct the attorneys for the parties and any unrepresented parties to appear before it for a conference or conferences before trial for such purposes as (1) expediting the disposition of the action; (2) establishing early and continuing control so that the case will not be protracted because of lack of management; (3) discouraging wasteful pretrial activity; (4) improving the quality of the trial through more thorough preparation; and (5) facilitating the settlement of the case."

Unlike the majority, I am convinced that Rule 16 does not authorize a trial judge to require a represented party litigant to attend a pretrial conference together with his or her attorney because the rule *mandates in clear and unambiguous terms that only an unrepresented party litigant and attorneys may be ordered to appear.*

Although I recognize that all courts, including those of federal jurisdiction, possess certain inherent authority, such as the contempt power and the power to determine whether the court has jurisdiction, this authority is limited. We recently warned that:

> " 'Inherent authority' is not a substitute for good reason.... 'Inherent authori-

ty' like its cousin in criminal law the 'supervisory power', is just another name for the power of courts to make common law when statutes and rules do not address a particular topic. Cf. *United States v. Widgery,* 778 F.2d 325, 328–29 (7th Cir.1985)."

*Soo Line R. Co. v. Escanaba & Lake Superior R. Co.,* 840 F.2d 546, 551 (7th Cir. 1988). The Supreme Court has placed clear limits on judicial reliance on "inherent authority" or, as it is labeled in the criminal law context, "supervisory power":

> "Even a sensible and efficient use of the supervisory power ... is invalid if it conflicts with constitutional or statutory provisions. A contrary result 'would confer on the judiciary discretionary power to disregard the considered limitations of the law it is charged with enforcing.'"

*Thomas v. Arn,* 474 U.S. 140, 148, 106 S.Ct. 466, 471, 88 L.Ed.2d 435 (1985) (quoting *United States v. Payner,* 447 U.S. 727, 737, 100 S.Ct. 2439, 2447, 65 L.Ed.2d 468 (1980)). Thus, as the majority recognizes, "the district court, in devising means to control cases before it, may not exercise its inherent authority in a manner inconsistent with rule or statute." Majority Opinion at 652.

The Supreme Court very recently underscored the fact that district courts are not to attempt to utilize an alleged inherent authority in a manner that contravenes the balance between varying interests that has previously been struck in a federal procedural rule, such as Federal Rule of Civil Procedure 16. In *Bank of Nova Scotia v. United States,* —— U.S. ——, 108 S.Ct. 2369, 2374, 101 L.Ed.2d 228 (1988), the Court held that a judge may not invoke inherent authority (labeled "supervisory" power by the Court) to dismiss an indictment based upon "harmless error" in a grand jury proceeding:

> "We now hold that a federal court may not invoke supervisory power to circumvent the harmless error inquiry prescribed by Federal Rule of Criminal Procedure 52(a). The balance struck by the Rule between societal costs and the rights of the accused may not casually be

overlooked 'because a court has elected to analyze the question under the supervisory power.' *United States v. Payner,* 447 U.S. [727, 736, 100 S.Ct. 2439, 2447, 65 L.Ed.2d 468 (1980) ]."

As the Supreme Court observed in an earlier decision rejecting the broad use of the supervisory power (inherent authority) to justify an individual court's determination that public policy required criminal defendants to be extended certain protections beyond those allowed in the Constitution, such

> "reasoning ... amounts to a substitution of individual judgment for the controlling decisions of this Court. Were we to accept this use of the supervisory power, we would confer on the judiciary discretionary power to disregard the considered limitations of the law it is charged with enforcing. We hold that the supervisory power does not extend so far."

*United States v. Payner,* 447 U.S. 727, 737, 100 S.Ct. 2439, 2447, 65 L.Ed.2d 468 (1980) (footnote omitted). Like the procedural rule involved in *Bank of Nova Scotia,* the Federal Rules of Civil Procedure, including Rule 16, "are the product of a careful process of study and reflection designed to take 'due cognizance both of the need for expedition of cases and the protection of individual rights.'" *Strandell v. Jackson County,* 838 F.2d 884, 886 (7th Cir.1987) (quoting S.Rep. No. 1744, 85th Cong., 2d Sess., *reprinted in* 1958 *U.S.Code Cong. & Admin.News* 3023, 3026). Furthermore, "in those areas of trial practice where the Supreme Court and the Congress, acting together, have addressed the appropriate balance between the needs for judicial efficiency and the rights of the individual litigant, innovation by the individual judicial officer must conform to that balance." *Id.* at 886–87.

Prior to 1983, Rule 16 only provided district court judges with the discretion to require the attendance of attorneys for parties at such proceedings. As pointed out earlier in this opinion, the Supreme Court and Congress took a good hard look at Rule 16 in hopes of improving judicial effi-

ciency and only increased the power of district court judges to the extent of authorizing them to compel the attendance of "unrepresented parties" at pretrial conferences.

However, it is very clear that the amendment explicitly stopped short of providing trial judges with the broad and sweeping authority to compel the presence of "represented parties" at pretrial conferences that the majority now seeks to achieve by judicial fiat. "[T]he Supreme Court and Congress, acting together, ... addressed the appropriate balance between the needs for judicial efficiency and the rights of the individual litigant,"[1] when they chose to amend Rule 16 in a limited manner. The majority upsets this careful balance and acts contrary to the Supreme Court's mandate in the *Bank of Nova Scotia* case when it relies upon an alleged "inherent authority" to permit district court judges to exercise a power which the drafters of Rule 16 explicitly denied them. *See United States R. Retirement Board v. Fritz*, 449 U.S. 166, 179, 101 S.Ct. 453, 461, 66 L.Ed.2d 368 (1980) ("The language of the statute is clear, and we have historically assumed that Congress intended what it enacted.")[2] The obvious intent of the Supreme Court and Congress that only attorneys and unrepresented parties be required to participate in pretrial conferences is clearly supported by the specific references to "attorneys" and "unrepresented parties" throughout Rule 16. Rule 16(a), as noted previously, allows for the court to "direct the attorneys for the parties and any unrepresented parties to appear before it." Rule 16(b), concerning scheduling, requires a judge to "consult[ ] with the attorneys for the parties and any unrepresented parties." Rule 16(c), regarding subjects to be discussed at a pretrial conference, states that "[a]t least one of the attorneys for

each party participating in any conference before trial shall have authority to enter into stipulations and to make admissions regarding all matters that the participants may reasonably anticipate may be discussed." Similarly, Rule 16(d), concerning final pretrial conferences, provides that "[t]he conference shall be attended by at least one of the attorneys who will conduct the trial for each of the parties and by any unrepresented parties."

The majority's creation of this new inherent authority to compel attendance of litigants (represented parties) also contravenes the terms of at least one other rule regulating compulsory attendance at judicial proceedings. Federal Rule of Civil Procedure 45 does not authorize subpoenas to be issued for pretrial conferences and permits the invocation of the subpoena power only for hearings and trials. On the federal level neither the Supreme Court nor Congress has given the courts the authority to direct litigants' attendance much less the power to subpoena them to pretrial conferences whose sole purpose is to discuss the upcoming trial, to frame and define the issues, and through custom to explore with the consent of the litigants' attorneys, in very limited situations, the discussion of settlement possibilities. Furthermore, the extension of the "inherent authority" doctrine to substitute for the subpoena power at pretrial conferences raises a due process question in that the court's rule authority to issue a subpoena is subject to a motion to quash, which is not available to challenge the alleged inherent authority. Assuming that the court would issue a contempt citation for failure to appear, I know of no avenue for an unwilling litigant to challenge the alleged "inherent authority" other than an attempt

---

1. *Strandell*, 838 F.2d at 886–87.

2. Justice Scalia pointed toward a similarly circumscribed construction of "supervisory power" when he recently noted: "Even less do I see a basis for any court's 'supervisory powers to discipline the prosecutors of its jurisdiction,' except insofar as concerns their performance before the court and their qualifications to be members of the court's bar." *Bank of Nova Scotia*, 108

S.Ct. at 2379 (Scalia, J., concurring) (quoting *United States v. Hasting*, 461 U.S. 499, 505, 103 S.Ct. 1974, 1978, 76 L.Ed.2d 96 (1983)). Likewise, there is no basis for a court's possession of broad inherent powers to force party litigants to participate in settlement discussions where the party litigants have not expressed a desire to participate.

to offer a defense to an unjustified contempt citation.

The newly created "inherent authority" to require represented litigants to appear at a pretrial conference is based upon a legal foundation of quicksand. Exercise of this power has posed and will continue to pose a substantial invitation for judicial abuse. The purpose of a pretrial conference is to set the parameters of litigation, clarify the issues and organize its presentation with the aid of the respective attorneys, and now, unrepresented party litigants in the hope of improving judicial efficiency at trial.

As Charles Richey, District Judge for the United States District Court for the District of Columbia, has noted, "Rule 16 provides an important mechanism for narrowing the issues in a case, saving time and expense for the litigants and easing the burden on the courts by facilitating the handling of congested dockets." C. Richey, *Modern Management Technique for Trial Courts to Improve the Quality of Justice: Requiring Direct Testimony to be Submitted in Written Form Prior to Trial*, 72 Geo.L.J. 73, 78 (1983). As the majority admits, " *'it is not the purpose of Rule 16(b)(7) to impose settlement negotiations on unwilling litigants.' *" Majority Opinion at 653 (quoting Fed.R.Civ.P. 16 Advisory Committee's Note (c) (1983)). We emphasized this fact when we noted that there is "nothing in the amended rule [16] or in the Advisory Committee Notes [that] suggests that the amendments were intended to make the rule coercive." *Strandell*, 838 F.2d at 888. In our judicial system all party litigants are entitled to their day in court to present their claims or defenses before an impartial judge or jury. Our trial judges must never fall prey to becoming part of a process that even subliminally suggests a pressure to forego the essential right of trial.

An example of the possible abuse that can result from creation of an inherent authority to require the attendance of represented party litigants at a pretrial conference is found in a case in which a trial judge in this circuit sought to compel the attendance of a represented party, the Secretary of Labor, to discuss a settlement after the Department of Labor's attorney refused to agree to a settlement proposal suggested by the district court.[3] The trial court judge in that case stated:

"I think I want to set a hearing as soon as I get back in which I want the Secretary of Labor to be here, not even Mr. Lilly. I'm tired of horsing around with people who sit in the Solicitor's Office, spending the taxpayer's money, having these kinds of, to me, difficult to understand, to put it gently, positions, and say, 'We want to take the position that any breach, however infinitesimal, however irrelevant, however immaterial, however inadvertent, however innocent, is going to be of significance in a determination as to whether or not compensation can be paid under an indemnification agreement to ERISA trustees.' I want the Secretary to tell me that that's the Department of Labor's position. I want the Secretary to tell me that he wants a hole in this decree so that the other court would have to decide whether or not what the Trustees and Senator Saxbe [Independent Special Counsel] and the Fund did—the staff recommendation and all—should be determined by a new and different judge who has never had anything to do with the case, has no background in it, has no knowledge of the facts, etcetera."

No. 85-1640, unpublished order at 2-3 (7th Cir. April 23, 1985). The district court added that:

"I will tell you now that I am through with the Department of Labor's waltzing around, taking ridiculous positions, and saying that this is the Government. The Government is the Secretary of Labor, so far as I'm concerned. And I want to see him at 10:00 o'clock on the 23rd of April in this courtroom to tell me why the Secretary of Labor is taking these idiotic positions."

**3.** No. 85-1640, unpublished order at 2 (7th Cir. April 23, 1985). This order is not cited as precedent, but merely for its description of the involved factual situation.

Creation of an "inherent authority" to require the presence of a party litigant at a pretrial conference presents a host of problems. Certainly, the court has the power to command the attendance of attorneys at the conference under the provisions of Rule 16 and as "officers of the court." However, I am convinced that if the attorney does not wish to have the litigant personally appear before the court at the pretrial conference, he is not bound to do so, lest, among other problems, the litigant make an admission of some type which would be damaging to the case and which had not previously been elicited in discovery proceedings. I believe we are all aware of the fact that the appearance of fairness, impartiality and justice is all imperative, and based upon logic I fail to understand how a litigant sitting at a *command appearance before a judge* who injects himself into an adversarial role for either of the parties' positions during settlement negotiations can feel that he or she (the litigant) will have a fair trial before the judge if he or she fails to agree with the judge's reasoning or direction regarding a recommended settlement. We may express in grandiose terms all sorts of theory and postulation about being careful not to influence, intimidate and/or coerce a settlement, but under the pressure that our trial judges experience today from their ever-burgeoning caseloads, we would be foolhardy not to anticipate an undesirable and unnecessary psychological impact upon the litigant in circumstances of this nature. The difficulties associated with active judicial participation in settlement negotiations is expressly exacerbated when the trial is scheduled before the court rather than a jury of one's peers. The appearance of partiality and impropriety must be avoided at all lengths if our nation is to continue to show respect for its judicial judgments. Since litigants are neither trained in the law nor have the basic understanding of the nuances of legal proceedings that we as lawyers have gained through years of education, professional training and experience, they could well be confused and dismayed with judicial participation in settlement negotiations.

My conclusion that judges lack the inherent authority to require the presence of a represented party litigant at a pretrial conference does not deprive trial judges of the ability to effectively handle their caseloads. Judges remain free to require the attendance of attorneys and unrepresented parties at pretrial conferences. However, if further measures are taken to coercively require the presence and active participation of a represented party at a pretrial conference, it is my considered belief that judges will be no longer worthy of the aura of impartiality for "the guiding consideration is that the administration of justice should reasonably appear to be disinterested as well as be so in fact." *Public Utilities Commission v. Pollack*, 343 U.S. 451, 466–67, 72 S.Ct. 813, 822–23, 96 L.Ed. 1068 (1952) (Frankfurter, J., in chambers).[4]

Rule 16 is an example of "the Supreme Court and the Congress, acting together [to address] the appropriate balance between the needs for judicial efficiency and the rights of the individual litigant." *Strandell*, 838 F.2d at 886–87. If we are to maintain the appearance of fairness and impartiality that is so important to preservation of confidence and respect for our cherished judicial system, "innovation by the individual judicial officer must conform to that balance." *Id.* at 887. The majority, in their attempt to permit judicial officers the right to exercise their personal judgment to require the attendance at pretrial conferences of entities other than those specifically enumerated in Rule 16, upsets the delicate balance the Supreme Court and

---

**4.** It should be noted that those who advocate expansive use of "supervisory power" or inherent authority in the criminal context rely upon the integrity of the judicial process as a justification for allowing courts to exercise this authority. *See United States v. Payner*, 447 U.S. 727, 745–46, 100 S.Ct. 2439, 2451–52, 65 L.Ed.2d 468 (1980) (Marshall, J., dissenting). In our case, creation of the appearance of impropriety with a judge actively injecting himself into the settlement procedure in the presence of the party litigants compromises, rather than furthers, the "protect[ion of] the integrity of the court," the "major purpose behind the exercise of the supervisory powers." 447 U.S. at 748, 100 S.Ct. at 2453.

Congress struck between the needs for judicial efficiency and the rights of the individual litigant. But on the other hand, if we wish to grant federal trial judges the power, let it be accomplished through the accepted channels of the Supreme Court and Congress of the United States.[5] Because district court judges lack authority to require the attendance of represented litigants at a pretrial conference as of this date, I dissent.[6]

EASTERBROOK, Circuit Judge, with whom POSNER, COFFEY and MANION, Circuit Judges, join, dissenting.

Our case has three logically separate issues. First, whether a district court may demand the attendance of someone other than the party's counsel of record. Second, whether the court may insist that this additional person be an employee rather than an agent selected for the occasion. Third, whether the court may insist that the representative have "full settlement authority"—meaning the authority to agree to pay cash in settlement (maybe authority without cap, although that was not clear). Even if one resolves the first issue as the majority does, it does not follow that district courts have the second or third powers, or that their exercise here was prudent.

The proposition that a magistrate may require a firm to send an employee rather than a representative is puzzling. Corporate "employees" are simply agents of the firm. Corporations choose their agents and decide what powers to give them. Which agents have which powers is a matter of internal corporate affairs. Joseph Oat Corp. sent to the conference not only its counsel of record but also John Fitzpatrick, who had authority to speak for Oat. Now Mr. Fitzpatrick is an attorney, which raised the magistrate's hackles, but why should this count against him? Because Fitzpatrick is a part-time rather than a full-time agent of the corporation? Why can't the corporation make its own decision about how much of the agent's time to hire? Is Oat being held in contempt because it is too small to have a cadre of legal employees—because its general counsel practices with a law firm rather than being "in house"?

At all events, the use of outside attorneys as negotiators is common. Many a firm sends its labor lawyer to the bargaining table when a collective bargaining agreement is about to expire, there to dicker with the union (or with labor's lawyer). Each side has a statutory right to choose its representatives. 29 U.S.C. § 158(b)(1)(B). Many a firm sends its corporate counsel to the bargaining table when a merger is under discussion. See Ronald J. Gilson, *Value Creation by Business Lawyers: Legal Skills and Asset Pricing*, 94 Yale L.J. 239 (1984). Oat did the same thing to explore settlement of litigation. A lawyer is no less suited to this task than to negotiating the terms of collective bargaining or merger agreements. Firms prefer to send skilled negotiators to negotiating sessions (lawyers are especially useful when the value of a claim depends on the resolution of legal questions) while reserving the time of executives for business. Oat understandably wanted its management team to conduct its construction business.

As for the third subject, whether the representative must have "settlement authority": the magistrate's only reason for ordering a corporate representative to come was to facilitate settlement then and there. As I understand Magistrate Groh's opinion, and Judge Crabb's, the directive was to send a person with "full settlement authority". Fitzpatrick was deemed inade-

**5.** "If such radical surgery is to be performed, we can expect that the national rule-making process outlined in the Rules Enabling Act will undertake it in quite an explicit fashion." *Strandell*, 838 F.2d at 888 (footnote omitted).

**6.** Although I am convinced that the district court lacked the authority to require represent-

ed parties to attend the pretrial conference, if it did have such power I would conclude, for the reasons enumerated by Judge Posner, that the magistrate acted improperly in exercising this power to require that Oat Corporation send to the settlement conference an executive possessing "full settlement authority."

quate only because he was under instructions not to pay money. E.g.: "While Mr. Fitzpatrick claimed authority to speak for Oat, he stated that he had no authority to make a [monetary] offer. *Thus,* no representative of Oat or National having authority to settle the case was present at the conference as the order directed" (magistrate's opinion, emphasis added). On learning that Fitzpatrick did not command Oat's treasury, the magistrate ejected him from the conference and never listened to what he had to say on Oat's behalf, never learned whether Fitzpatrick might be receptive to others' proposals. (We know that Oat ultimately did settle the case for money, after it took part in and "prevailed" at a summary jury trial—participation and payment each demonstrating Oat's willingness to consider settlement.) The magistrate's approach implies that if the Chairman and CEO of Oat had arrived with instructions from the Board to settle the case without paying cash, and to negotiate and bring back for the Board's consideration any financial proposals, Oat still would have been in contempt.

Both magistrate and judge demanded the presence not of a "corporate representative" in the sense of a full-time employee but of a representative with "full authority to settle". Most corporations reserve power to *agree* (as opposed to power to discuss) to senior managers or to their boards of directors—the difference depending on the amounts involved. Heileman wanted $4 million, a sum within the province of the board rather than a single executive even for firms much larger than Oat. Fitzpatrick came with power to *discuss* and *recommend;* he could settle the case on terms other than cash; he lacked only power to sign a check. The magistrate's order therefore must have required either (a) changing the allocation of responsibility within the corporation, or (b) sending a quorum of Oat's Board.

Magistrate Groh exercised a power unknown even in labor law, where there is a duty to bargain in good faith. 29 U.S.C. § 158(d). Labor and management commonly negotiate through persons with the authority to discuss but not agree. The negotiators report back to management and the union, each of which reserves power to reject or approve the position of its agent. We know from Fed.R.Civ.P. 16—and especially from the Advisory Committee's comment to Rule 16(c) that the Rule's "reference to 'authority' is not intended to insist upon the ability to settle the litigation"—that the parties cannot be compelled to negotiate "in good faith". A defendant convinced it did no wrong may insist on total vindication. See *Hess v. New Jersey Transit Rail Operations, Inc.,* 846 F.2d 114 (2d Cir.1988), and *Kothe v. Smith,* 771 F.2d 667 (2d Cir.1985), holding that a judge may not compel a party to make a settlement offer, let alone to accept one. Rule 68, which requires a party who turns down a settlement proposal to bear costs only if that party does worse at trial, implies the same thing. Yet if parties are not obliged to negotiate in good faith, on what ground can they be obliged to come with authority to settle on the spot—an authority agents need not carry even when the law requires negotiation? The order we affirm today compels persons who have committed no wrong, who pass every requirement of Rules 11 and 68, who want only the opportunity to receive a decision on the merits, to come to court with open checkbooks on pain of being held in contempt.

Settling litigation is valuable, and courts should promote it. Is settlement of litigation more valuable than settlement of labor disputes, so that courts may do what the NLRB may not? The statutory framework —bona fide negotiations required in labor law but not in litigation—suggests the opposite. Does the desirability of settlement imply that rules of state law allocating authority within a corporation must yield? We have held in other cases that settlements must be negotiated within the framework of existing rules; the desire to get a case over and done with does not justify modifying generally applicable norms. E.g., *Dunn v. Carey,* 808 F.2d 555, 560 (7th Cir.1986) (consent decrees, and hence settlement, may be more attractive if parties may agree not to follow state law, but the value of settlement does not autho-

rize that); *Kasper v. Board of Election Commissioners,* 814 F.2d 332, 340–42 (7th Cir.1987) (same); *In re Memorial Hospital of Iowa County, Inc.,* 862 F.2d 1299 (7th Cir.1988) (parties' desire to settle does not justify vacating a judicial opinion that may be valuable to other persons). See also, e.g., *Tiedel v. Northwestern Michigan College,* 865 F.2d 88 (6th Cir.1988) (a district court lacks the power to promote settlement by requiring a party who rejects a mediator's proposal to pay the prevailing side's attorneys' fees).

The majority does not discuss these problems. Its approach implies, however, that trial courts may insist that representatives have greater authority than labor negotiators bring to the table. And to create this greater authority, Oat Corp. might have to rearrange its internal structure—perhaps delegating to an agent a power state law reserves to the board of directors. Problems concerning the reallocation of authority are ubiquitous. For example, only the Assistant Attorney General for the Civil Division has authority to approve settlements of civil cases, and his authority reaches only to $750,000; above that the Deputy Attorney General must approve. 28 C.F.R. §§ 0.160(a)(2), 0.161. An attorney for the government, like Fitzpatrick, lacks the authority to commit his client but may negotiate and recommend. Does it follow that, in every federal civil case, a magistrate may require the presence of the Assistant or Deputy Attorney General or insist that they redelegate their authority? If such a demand would be improper for the Department of Justice, is it more proper when made of Joseph Oat Corporation?

These issues will not go away. The magistrate's order was to send a representative *with the authority to bind Oat to pay money.* What is the point of insisting on such authority if not to require the making of offers and the acceptance of "reasonable" counteroffers—that is, to require good faith negotiations and agreements on the spot? Fitzpatrick had the authority to report back to Oat on any suggestions; he had the authority to participate in negotiations. The only thing he lacked—the *only* reason Oat was held in contempt of court—

was the ability to sign Oat Corp.'s check in the magistrate's presence. What the magistrate found unacceptable was that Fitzpatrick might say something like "I'll relay that suggestion to the Board of Directors", which might say no. Oat's CEO could have done no more. We close our eyes to reality in pretending that Oat was required only to be present while others "voluntarily" discussed settlement.

RIPPLE, Circuit Judge, with whom COFFEY, Circuit Judge, joins, dissenting.

I join the dissenting opinions of Judge Coffey and Judge Manion. I write separately only to emphasize that the most enduring—and dangerous—impact of the majority's opinion will not be its effect on the conduct of the pretrial conference, but on the relationship between the Judiciary and the Congress in establishing practice and procedure for the federal courts. Recognizing that the line between substance and procedure is at best an indistinct and vague one, the two branches of government have established a long tradition of shared responsibility for this aspect of governance. That tradition is embodied principally—although not exclusively—in the Rules Enabling Act. 28 U.S.C. § 2072. That Act was designed to foster a uniform system of procedure throughout the federal system, supplemented but not altered, by local rules to take care of local problems. Experimentation at the local level in areas where policy choices have not been made at the national level is permitted. Moreover, there is no question that the judicial officer retains a substantial degree of inherent authority to deal with individual situations —as long as that authority is exercised in conformity with the policies embodied in the national rules. However, the Rules Enabling Act hardly contemplates the broad, amorphous, definition of the "inherent power of a district judge," at 652, articulated by the majority.

It is significant that, just months ago, in the Judicial Improvements and Access to Justice Act, Pub.L. No. 100–702, 102 Stat. 4642 (1988), Congress made clear its con-

cern with district courts' frustrating the careful process of evaluation and consensus set up by the Rules Enabling Act through the proliferation of local rules. §§ 401–407, 102 Stat. 4648–52. Today's decision is indeed hard to reconcile with the underlying Congressional concern for uniformity of practice in the federal courts. Indeed, the majority encourages the individual district court to march to its own drummer. Before long, we shall no doubt see the rhetoric of its opinion used to justify far more questionable "innovations" than the strong-arm settlement methodology of the magistrate at issue in this opinion.

MANION, Circuit Judge, joined by COFFEY, EASTERBROOK and RIPPLE, Circuit Judges, dissenting.

Federal Rule of Civil Procedure 16 states that district courts may order "the attorneys for the parties and any unrepresented parties" to appear at pretrial settlement conferences. Despite this seemingly clear language, the majority holds that district courts have "inherent power" to compel parties represented by counsel to appear in court to discuss settlement. Because Rule 16 leaves no room for any such use of inherent power, I respectfully dissent.

Inherent power is not a license for federal courts to do whatever seems necessary to move a case along. Inherent power is simply "another name for the power of courts to make common law when statutes and rules do not address a particular area." *Soo Line R. Co. v. Escanaba & Lake Superior R. Co.*, 840 F.2d 546, 551 (7th Cir. 1988). Since inherent power's purpose is to fill gaps left by statute or rule, it necessarily follows that where a statute or rule specifically addresses a particular area, it is inappropriate to invoke inherent power to exceed the bounds the statute or rule sets. Cf. *Bank of Nova Scotia v. United States*, —— U.S. ——, 108 S.Ct. 2369, 2373–74, 101 L.Ed.2d 228 (1988) (a federal court may not invoke its supervisory—i.e. inherent—power over criminal proceedings to circumvent Fed.R.Crim.P. 52(a)'s harmless error inquiry).

We recently applied this principle in *Strandell v. Jackson County*, 838 F.2d 884 (7th Cir.1988). In *Strandell*, we recognized that district courts must exercise their inherent power "in harmony with the Federal Rules of Civil Procedure." After carefully examining Rule 16 and its accompanying advisory committee note, we held in *Strandell* that a district court may not order an unwilling litigant to participate in a summary jury trial because Rule 16, which addresses the district courts' power to insist on pretrial settlement proceedings, did not authorize district courts to conduct mandatory summary jury trials. See *id.* at 186–88. Implicit in this holding is that no inherent power exists to conduct mandatory summary jury trials; Rule 16 shut the door on such proceedings.

The issue here—whether a district court may order a represented party to appear at a settlement conference—is slightly different from the issue in *Strandell*. But the proper analysis is the same. Since Rule 16 specifically addresses the use of settlement conferences in the federal courts, we must determine whether Rule 16 limits a district court's power over who the court may order to appear at those conferences.

As with any rule or statute, the proper starting point in interpreting Rule 16 is the rule's language. We should not be content to rely on general statements about "liberal construction," and Rule 16's "broadly remedial" "spirit." See majority opinion at 652–53. It is true that Rule 1 commands us to construe the federal rules "to secure the just, speedy, and inexpensive determination of every action;" but that command is not an excuse for us to ignore the words the drafters used to pursue that goal.

As originally enacted, Rule 16 provided that district courts could "direct the attorneys for the parties" to appear for pretrial conferences. In 1983, Rule 16 was amended to provide, among other things, that the possibility of settlement is an appropriate subject to consider at pretrial conferences. Fed.R.Civ.P. 16(c)(7); see also Fed.R.Civ.P. 16(a)(5) ("facilitating" settlement). But Rule 16(c) states only that "the *partici-*

*pants* at any conference under this rule" may consider settlement (emphasis added); Rule 16(c) does not say who those "participants" may be. Rule 16(a), on the other hand, provides that a district court may "direct the *attorneys for the parties and any unrepresented parties* " to appear for a pretrial conference. Rule 16(a) thus defines who the "participants" at a pretrial conference are: attorneys and unrepresented parties.

As Judge Coffey notes, dissenting opinion at 660, other parts of Rule 16 echo Rule 16(a)'s reference to attorneys and unrepresented parties. Rule 16(b) requires courts to enter scheduling orders after consulting with "the attorneys for the parties and any unrepresented parties...." Rule 16(d) requires that "one of the attorneys who will conduct the trial for each of the parties and ... any unrepresented parties" must attend the final pretrial conference.

The language of Rule 16's sanctions provision, Rule 16(f), reinforces Rule 16's distinction between represented and unrepresented parties. The only language in Rule 16(f) specifically addressing appearance does *not* authorize sanctions if "a party fails to appear;" instead, sanctions are appropriate if "no appearance is made *on behalf of a party....*" (Emphasis added.) This choice of language is significant. In the normal course, an attorney appears "on behalf of" a represented client at a pretrial conference. An unrepresented party has nobody to appear on his behalf except himself.

Congress has provided that litigants may "conduct their own cases personally *or by counsel ....*" 28 U.S.C. § 1654 (emphasis added). Rule 16's distinction between represented and unrepresented parties is consistent with a litigant's statutory right to representation by an attorney. It is also consistent with the attorney's traditional role in litigation. Litigants hire attorneys to take advantage of the attorneys' train-

ing and skill and, as Judge Posner notes, "to economize on their own investment of time in resolving disputes." Dissenting opinion at 657, Part of an attorney's expertise includes evaluating cases, advising litigants whether or not to settle, and conducting negotiations. I realize that attorneys may sometimes convey inadequate information to their clients regarding settlement. But an attorney has a strong self interest in realistically conveying to the client relevant information necessary for the client to make an informed settlement decision, and in accurately conveying the client's settlement position to the court and opposing litigants. The attorney also has an ethical duty to convey that information. The threat of malpractice suits and disciplinary proceedings should be sufficient to make any attorney think twice before trying to mislead his client or the court. Attorneys play an important role in our adversary system, and we should not denigrate that role by presuming that attorneys will be incompetent to perform one of the most important functions for which their clients hire them. Nor should we presume that Rule 16's drafters meant to encroach on a litigant's right to conduct his case through counsel. Rule 16's clear language shows that the rule's drafters presumed otherwise.

The majority asserts that Rule 16 "does not give any direction to the district court upon the issue of a court's authority to order litigants who are represented by counsel to appear for pretrial proceedings." Majority opinion at 651. But given Rule 16's clear language and consistent distinction between represented and unrepresented parties (a consistent distinction the majority ignores), that assertion is specious. The majority seems to be saying that district courts can order represented parties to appear at settlement conferences because Rule 16 does not *explicitly* say that district courts *cannot* order represented parties to appear.[1] But that ignores the

---

1. The majority, citing *Link v. Wabash R. Co.,* 370 U.S. 626, 82 S.Ct. 1386, 81 L.Ed.2d 734 (1962), asserts that "the mere absence of language in the federal rules specifically authoriz-

ing or describing a particular judicial procedure should not, and does not, give rise to a negative implication of prohibition." Majority opinion at 652. That sweeping statement reads far too

drafters' decision in 1983 to specifically add "unrepresented parties" to the people a district court can order to appear under Rule 16. It also ignores the drafters' language in Rule 16(f) specifically addressing a failure to appear "on behalf of a party" at a pretrial conference. If the drafters had intended to allow district courts to order *represented* parties to appear, or to sanction parties for failing to appear (as opposed to failing to send someone to appear), the drafters could have easily said so.

The majority offers no reason why the drafters used the language they did in Rule 16 if they did not intend to limit the district courts' authority to order represented parties to appear. No reason appears on Rule 16's face or in the advisory committee note. Apparently, the majority would chalk up the drafters' choice of language to inadvertence or sloppy draftsmanship. But a rule's words are meant to convey a meaning to those who read the rule. This court should give the drafters credit for being able to communicate what they actually intended. Furthermore, the process for amending the federal rules belies any inadvertence or sloppy draftsmanship. As Professors Wright and Miller have noted,

> [w]hen the Civil Rules are amended, the process is extremely careful. The Advisory Committee on Civil Rules includes lawyers, judges, and scholars with a national reputation for their expertness on matters of procedure, and it is assisted by a scholar of rank who acts as its Reporter. When it has agreed on a preliminary draft of amendments, thousands

of copies of that draft are sent out to the profession. Many comments on the draft, and suggestions for improvement in it, then come back to the committee from bar association committees, individual lawyers and scholars, and in law review commentary. The draft is reevaluated and refined in the light of these comments. When the Advisory Committee has completed its work, the amendments still must be approved by the Standing Committee on Rules of Practice and Procedure, by the Judicial Conference of the United States, and by the Supreme Court, and Congress retains the power, though it never has exercised it, to disapprove the amendments. The process is calculated to ensure that any changes reflect the best thinking of the entire profession.

12 C. Wright & A. Miller, *Federal Practice and Procedure* § 3152, at 220 (1973). It is incredible to believe that after this careful process, amended Rule 16 would expressly authorize district courts to order only attorneys and unrepresented parties to appear if the drafters also intended to allow district courts to order represented parties to appear. This is especially so given Rule 16's consistent distinction between represented and unrepresented parties, and that distinction's congruence with the statutory right to representation by an attorney and the attorney's traditional role in litigation.

The advisory committee note accompanying the 1983 amendment of Rule 16 reinforces the conclusion that Rule 16 leaves no room for any inherent power to order represented parties to attend pretrial set-

---

much into *Link's* narrow holding. *Link* held that a district court retained the inherent power to dismiss a case *sua sponte* for failure to prosecute in the face of Fed.R.Civ.P. 41(b), which merely authorized defendants to move for such dismissals. The Court in *Link* reasoned that given the longstanding—indeed, ancient—authority of trial courts to dismiss cases for want of prosecution, "it would require a much clearer expression of purpose than Rule 41(b) provides for us to assume that it was intended to abrogate" that power. 370 U.S. at 630–32, 82 S.Ct. at 1388–90.

    *Link* did not hold that negative implication is always an inappropriate tool to use in interpreting the federal rules. *Link* only held that

in the context of the particular rule and the particular power involved in that case, any negative implication was not enough, by itself, to convince the Court that the rule's drafters meant to limit that power. While negative implication may not, by itself, completely answer what limits a particular rule places on a district court's power, it does provide a starting point for that analysis. As demonstrated in the text, this case involves much more than the "mere absence" of a particular procedure in Rule 16. *Link* does not relieve us of the responsibility of analyzing the language the drafters used—and did not use—in Rule 16.

tlement conferences. While the majority makes much of the drafters' general intent to allow district courts "to make wider use of their powers and to manage actively their dockets," the majority offers little in the way of specifics. The advisory committee note does not discuss settlement conferences in much detail. The note does state, however, that "[A]lthough it is not the purpose of Rule 16(b)(7) to impose settlement negotiations on unwilling litigants it is believed that providing a neutral forum for discussing the subject might foster it."

The majority brushes aside this admonition by drawing a distinction between being required to attend a settlement conference and being required to negotiate. This distinction is puzzling. I suppose that if a represented party is required to come to court to state his position—even if that position is simply, "I refuse to settle. See you at trial."—that would not be requiring the represented party to "negotiate." But if that is all the majority is requiring, then the majority has recognized nothing more than a district court's inherent power to waste litigants' time doing what their attorneys could have done (and were hired to do). Rule 16's drafters could hardly have meant to approve (or allow) such a pointless exercise.

The majority obviously does not envision that a settlement conference should be the pointless exercise sketched out above. The majority cites with approval the district court's statement that " '[t]he only requirement imposed by the magistrate was that [Oat's] representative be present with full authority to settle, should terms for settlement be proposed that were acceptable to [Oat].' " Majority opinion at 653. The majority also states that a district court may require represented parties "to come to court to consider the possibility of settlement." But requiring that a party consider the possibility of settlement and that the party have authority to settle if another party proposes acceptable terms presupposes that besides stating his own position, the party must sit and listen to other parties' (and, possibly, the court's) proposals. How else could a representative with "authority to settle" act on terms he might find ac-

ceptable, except by listening to possible terms? It appears that the court is saying that a district court may order a represented party to appear in court both to talk and listen about settlement—in other words, to actually *discuss* settlement. I cannot see any meaningful distinction between this kind of activity and "negotiation;" after all, negotiation in large measure simply involves discussion. If a distinction does exist, it is so blurry as to be almost invisible, and certainly difficult, if not impossible, to enforce. The distinction is especially elusive in this case because, as Judge Easterbrook notes, dissenting opinion at 664, the magistrate's order that Oat send a representative with "authority to settle" could only mean that Oat's representative had to have the *ability* to settle *by paying money*—even if, as the majority claims, "authority to settle" did not mean that the representative had to be willing to use that ability. What is the point of insisting on such authority if not to require negotiation?

The majority errs by interpreting the advisory committee's admonition against forced negotiations too narrowly. Rule 16 is dead set against any coercive settlement practices. The advisory committee note speaks only of facilitating—that is, providing a forum for the parties to *voluntarily* pursue—settlement. Cf. *Strandell*, 838 F.2d at 837. Even if it is possible to draw a distinction between "discussing" and "negotiating" that is reasonably possible to enforce, the kind of coerced participation by represented parties in settlement conferences that the majority seems to approve is close enough to forced negotiation to fall within the advisory committee's general admonition against forced settlement. Moreover, Rule 16 "was not intended to require that an unwilling litigant be sidetracked from the normal course of litigation." *Id.* Rule 16's language and structure—its consistent distinction between represented and unrepresented parties—leave no doubt that in the normal course of litigation, including settlement discussions, the rule's drafters envisioned that courts would work with attorneys, not the attorneys' clients. Given

Rule 16's clear language, the advisory committee's comments leave no room for construing that rule to allow a district court to order represented parties, under threat of contempt (see Fed.R.Civ.P. 16(f) and 37(b)(2)(D)), to appear in court to discuss settlement.

One may ask why the majority strains to get around Rule 16's clear language and the advisory committee's admonition against coercive settlement practices. Implicit in the majority's opinion—and explicit in the dissent to the panel opinion—is the notion that to effectively manage their case loads, district courts need the power to order represented parties to appear at settlement conferences. See majority opinion at 650–51; *G. Heileman Brewing Co. v. Joseph Oat Corp.*, 848 F.2d 1415, 1427 (7th Cir.1988) (dissenting opinion); see also Judge Posner's dissenting opinion at 657. Even if this is so (and I do not think it is), it does not justify expansively interpreting the district courts' inherent power to exceed the bounds Rule 16 sets. Moreover, as Judge Coffey and Judge Posner demonstrate, if any benefits do result from allowing district courts to order represented parties to attend settlement conferences, those benefits do not come without substantial costs. One of those costs is that expansively construing inherent power encourages judicial high-handedness. This case (in which Judge Posner has accurately labeled the magistrate's actions as "arbitrary, unreasonable, willful, and indeed petulant," dissenting opinion at 658) and the case involving the Secretary of Labor, cited by Judge Coffey, dissenting opinion at 661–62, aptly demonstrate that danger. Another cost is the expense and imposition on litigants that litigants try to avoid by hiring attorneys. A third cost is the denigration of the attorney's role in litigation. Perhaps the greatest cost, as Judge Coffey explains in detail, dissenting opinion at 662, is the damage to the appearance of fairness and the federal court's image as a neutral forum, factors that are essential to the court's proper functioning. Say what we will about the difference between coercing settlement and coercing attendance, it is difficult to believe that a litigant who has been forced to appear against his will, and possibly to listen to the opposing party or a judicial officer berate his litigation position, is going to walk away from that experience feeling he will get a fair shake from the court at trial if he resists the pressure to capitulate.

Obdurate litigants who unreasonably refuse to settle may cause headaches for the courts and opposing litigants. But litigants have no duty to settle, or even negotiate, and Rule 16 makes clear that federal courts have no business trying to force litigants to negotiate. If a litigant's position is legally or factually unsound, procedures such as judgment on the pleadings, Rule 12(b) dismissal, and summary judgment exist to dispose of the case at an early stage. District courts also have substantial power—of which they should take full advantage—to deter and punish frivolous litigation and undue delay. See 848 F.2d at 1421–22 (mentioning, among other things, the district courts' scheduling power under Rule 16 and the courts' sanctioning powers under Rule 16, Rule 11, and 28 U.S.C. § 1927). And district courts still have other methods—without forcing unwilling litigants to appear in court under threat of contempt—to facilitate settlements, including the time-honored method of pushing cases to early trials. See *id;* see also *Strandell*, 838 F.2d at 887. Where these methods do not produce settlements, it is unlikely that coercion will. And where coercion does succeed in producing a settlement, it is unlikely that success will advance the cause of justice or the federal court's image as a neutral forum.

In what seems to be an attempt to justify its result by implying that coercing represented parties to appear at settlement conferences has received widespread judicial approval, the majority asserts that "requiring represented parties to appear in person ... has been part and parcel of ... settlement conferences for years." Majority opinion at 651 n. 4. The only case the majority cites for this statement is *In re LaMarre*, 494 F.2d 753 (6th Cir.1974). In *LaMarre*, counsel for plaintiffs and defendants indicated to the district court on the morning of trial that they had reached a

settlement. The defendant's insurer's claims manager, however, would not accept the settlement. The district court ordered the claims manager to appear in court to discuss the matter and, when the claims manager failed to appear, held him in criminal contempt. *Id.* at 754–55. The court of appeals upheld the court's general authority to order the claims manager to appear. *Id.* at 756.

*LaMarre* is distinguishable. Because of the conflict between the defendant, his counsel (hired by the insurance company), and the insurance company, it is arguable that the insurance company was not a represented party (assuming that it was a party at all); even though the insurer hires and pays the attorney, the attorney's allegiance is to the defendant, not the insurer. If that's so, even the amended Rule 16 would not prohibit ordering the insurer's representative to appear in court because amended Rule 16 expressly authorizes district courts to order unrepresented parties to appear.

More importantly, *LaMarre*, despite its broad language, see *id.* at 756, does not stand for any widespread judicial approval for ordering represented parties to appear at settlement conferences. *LaMarre* is the *only* appellate case (besides this case) that has even dealt with the issue. More importantly, the Sixth Circuit decided *LaMarre* long before the 1983 amendments to Rule 16. Since the Sixth Circuit could not consider Rule 16 as amended, *LaMarre* simply does not address whether Rule 16, as it now stands, limits the district court's power to order represented parties to appear at settlement conferences.

The answer to the question that *LaMarre* could not address is clear. Rule 16, as amended, authorizes district courts to order only attorneys and unrepresented parties to appear at pretrial conferences.

The rule consistently distinguishes between attorneys and unrepresented parties on one hand, and represented parties on the other. That distinction is consistent with litigants' statutory right to representation by counsel and with the attorney's traditional role in litigation, including settlement. No reason exists why Rule 16's drafters wrote the rule as they did if they did not mean what they said. Finally, the advisory committee note to the 1983 amendment of Rule 16 states that Rule 16 was not meant "to impose settlement negotiations on unwilling litigants," and, more generally, that Rule 16 is dead set against any coercion in settlement. Taken together, all this can lead to only one conclusion: Rule 16 leaves no room for any inherent power in the district courts to order represented parties to appear at settlement conferences.

"Federal judges spend lots of time telling other officials to stay within constitutional and statutory bounds, however those bounds may chafe in particular circumstances." *Newman–Green, Inc. v. Alfonzo–Larrain R.*, 854 F.2d 916, 926 (7th Cir. 1988). However much federal courts may desire the power to address unwilling parties directly in endeavoring to induce settlements, Rule 16 commands that the courts work through the parties' attorneys if that is what the parties desire. Rather than straining to circumvent Rule 16's clear command, we should demand that those of us in the federal judiciary practice what we preach so much to others, and work within the entirely reasonable limits that Rule 16 sets. Because the magistrate did not have the power to order Oat to send a corporate representative to the settlement conference, I would reverse the district court's judgment.[2]

---

**2.** The majority also holds that Oat has waived any objection to the magistrate's order because Oat did not object before the settlement conference. See majority opinion at 654–55. For the reasons stated in the panel opinion, 848 F.2d at 1418, I would hold that Oat has not waived its right to object to the magistrate's order. I also agree with Judge Posner that even if the magis-

trate had the power to order Oat to send a corporate representative, other than its attorney, to the settlement conference, the magistrate abused his discretion in exercising that power. Even if a district court may order a corporate representative to appear, the court may not insist that the representative have "authority to settle." See Fed.R.Civ.P. 16, advisory committee

note ("The reference to 'authority' in Rule 16(c) is not intended to insist upon the ability to settle the litigation"); see also Judge Easterbrook's dissenting opinion at 664.