# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 01-8001

In Re ERIC C. CONN, Attorney at Law

Before FARLEY, IVERS, and STEINBERG, *Judges*

## O R D E R

Eric C. Conn, a member of the Court's Bar, has submitted, in the form prescribed by the Court, his resignation from the Bar in lieu of further investigatory proceedings on allegations of professional misconduct in cases before this Court. In submitting this resignation, attorney Conn has also relinquished any right to apply for reinstatement or readmission at any time in the future.

A resignation from the Bar while investigation as part of a disciplinary proceeding is pending is not provided for in the Court's Rules of Admission and Practice. However, it is well established that a federal court possesses the inherent power to control admission to its bar and to discipline attorneys who appear before it. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991) ("While this power 'ought to be exercised with great caution,' it is nevertheless 'incidental to all Courts.'" (citing *Ex parte Burr*, 9 Wheat. 529 (1824))). The U.S. Supreme Court has ruled that the inherent powers of a court can be invoked even if procedural rules exist that sanction the same result by a different method. 501 U.S. at 49. "[I]f in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power." *Id.* at 50; *see Klein v. Stahl GMBH & Co. Maschinefabrik*, 185 F.3d 98 (3d Cir. 1999).

> Because the [Federal Rules of Civil Procedure] form and shape certain aspects of a court's inherent powers [to control its own proceedings], yet allow the continued exercise of that power where discretion should be available, the mere absence of language in the federal rules specifically authorizing or describing a particular judicial procedure should not, and does not, give rise to a negative implication of prohibition.

*G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.*, 871 F.2d 648, 651-52 (7th Cir. 1987) (citing *Link v. Wabash R.R.,* 370 U.S. 626 (1962)). Accordingly, we conclude that this Court has the inherent power to accept resignations from members of the Bar who are involved in a disciplinary proceeding.

Although the Court has the inherent power to accept a resignation during the pendency of a disciplinary proceeding, whether the Court should accept such a resignation is a matter within the Court's discretion. In determining whether to accept such resignations, courts have generally focused upon the impact that resignation will have on public policy interests such as maintaining the integrity of the bar, the administration of justice, and protection of the public. *Compare People v. Pacheco*,

198 Colo. 455, 608 P.2d 333 (Colo. 1979) (en banc) (permitting an attorney charged with neglecting a variety of clients' legal matters to surrender his license to practice law); *In re Green,* 357 So. 2d 729 (Fla. 1978) (permitting resignation where the attorney had failed to prosecute an appeal of a traffic conviction, forward criminal appellate records to a client, pursue a foreclosure, probate an estate, and timely complete a real-estate closing, and neglected a legal matter that resulted in default judgment being entered against the client) *and In re Vaught,* 342 So. 2d 820 (Fla. 1977) (attorney failed to communicate with and misrepresented the status of a case to his client) *with In re McCoy,* 447 N.W. 2d 887 (Minn. 1989) (denying the attorney's petition for resignation submitted during the pendency of disciplinary proceedings involving contentions that the attorney had failed to file suits or documents he claimed to have filed, refused to comply with request that he return client files, made no accounting to client on a judgment collection matter, and failed to cooperate with ethics investigation) *and In re Atkins,* 253 Ga. 319, 320 S.E.2d 146 (Ga. 1984) (disbarring rather than accepting attorney's voluntary surrender of his license because the court viewed the attorney's failure to be aware of and to assert the right of a client potentially faced with a death sentence to a bifurcated trial on the issues of guilt and sentencing as so egregious a defect in his competence as to warrant, for the protection of the public, the most severe of sanctions).

Although the Court is concerned by the alleged professional misconduct of the respondent, his agreement to cease all practice before this Court provides the Court and its appellants with protection from any repetition of such conduct by him. Moreover, no appellant has filed a complaint with the Court relating to professional services provided by the respondent. Therefore, the Court will accept the respondent's resignation. This resignation is not to be construed as an admission of the allegations of professional misconduct by attorney Conn and the acceptance of the resignation by the Court does not constitute a finding by the Court as to the allegations pending. Nor does this order constitute an "order imposing discipline," pursuant to Rule 13 of this Court's Rules of Admission and Practice and, accordingly, the Clerk of the Court is not required to make the notifications described in subsections (b) and (c) of Rule 13.

Upon consideration of the foregoing, it is

ORDERED that the resignation of Eric C. Conn from the Bar of this Court, conditioned by his relinquishment of any right to apply for reinstatement or readmission, is accepted, and his name is hereby removed from the rolls of practitioners admitted to practice before this Court.

DATE:        September 30, 2002                PER CURIAM.

STEINBERG, *Judge*, concurring in part and dissenting in part: I agree with the majority that it is proper for the Court to accept the respondent's resignation from the Bar of this Court and that we possess the authority to allow him to resign while under disciplinary investigation. However, I cannot join in the per curiam order because I believe that it is deficient (1) in failing to address the procedural issue of whether certain matters should first be submitted to the Committee on Admission and Practice (Committee), rather than the Court; (2) in its narrow view of "protection of the public", as it relates to notification; and (3) in failing to substantiate its apparent determination that the Court's action is not an imposition of discipline that would lead to the notifications by the Clerk of

the Court (Clerk) that are described in Rule 13(b) and (c) of the Court's Rules of Admission and Practice (A&P Rules).

## I. *Committee Issues*

On May 30, 2002, the respondent submitted ***directly*** to the Court, with a copy sent also to the Committee, a motion for leave to resign. At the time that the appellant submitted this pleading to the Court, he was, as he is now, under investigation by the Committee for potential disciplinary violations. *See* U.S. VET. APP. R. ADM. & PRAC. [hereinafter "A&P RULE"] 2(c). Under our A&P Rules, the Committee is the investigative body in these proceedings, *see* A&P RULE 2(c)(3) (providing that "[t]he Committee ***will*** investigate the matter" (emphasis added)), and "[i]t is the duty of the . . . practitioner concerned or his or her counsel to cooperate with the Committee", A&P RULE 2(f). I am concerned that the respondent here made his motion (for leave to resign) directly to the Court, and not to the Court ***through*** the Committee, the body that was investigating his actions. Hence, I believe that the Court should have addressed the rationale for allowing the respondent to bypass the Committee in this instance. Although such action, in certain circumstances, may be appropriate, allowing the respondent's motion in this case to proceed directly to the Court should not be seen as in any way lessening the responsibility of the respondent, or any future applicant or practitioner, to cooperate fully with the Committee.

For my part, I view the Court's decision to accept the respondent's resignation in this case as not intended to short-circuit the Committee's investigatory process. Rather, it is merely a particular instance where a proposed resolution is the most expedient and efficient means of terminating the matter while still permitting protection of the interests for which the process was initiated (*see* parts II. and III., below). I would expect that in the future a decision whether to accept or reject such an offer of resignation would be analyzed on a case-by-case basis.

I also wish to express appreciation for the Committee's diligence and effort in this matter.

## II. *Protection of Public Interest*

The per curiam order states that "[i]n determining whether to accept such resignations, courts have generally focused upon the impact that resignation will have on public policy interests such as maintaining the integrity of the [B]ar, the administration of justice, and protection of the public." *Ante* at 2. This is a fine and laudatory notion, but the Court undercuts it a few lines later when it states that the respondent's "agreement to cease all practice before this Court provides ***the Court and its appellants*** with protection from any repetition of such conduct." *Ante* at 2 (emphasis added). The first statement of the Court, particularly with its recognition of the public policy interests of disciplinary proceedings in the "protection of the public", recognizes a broader area of concern, and one that I feel is a legitimate concern for this Court. Unfortunately, the second statement reflects an ill-advised restriction of our concern to how an action will affect only our corner of the legal world.

Under Rule 46(a)(1) of this Court's Rules of Practice and Procedure, an attorney may be admitted to the Bar of this Court if he or she is "of good moral character" ***and*** "has been admitted to practice in the Supreme Court of the United States, or the highest court of any state, the District

of Columbia, or a territory, possession, or commonwealth of the United States, and is in good standing therein".  U.S. VET. APP. R. 46(a)(1).  It is axiomatic that an attorney who is admitted to practice before this Court will be admitted to practice before **at least** one other Court.  Therefore, unlike most courts overseeing disciplinary investigations, this Court has **certain knowledge** of the fact that the attorney under investigation is licensed to practice before other courts.

Although we obviously possess the power to oversee only the Bar of **this** Court, that does not, to my mind, excuse us from exhibiting greater concern for the "protection of the public" in a sense that extends beyond the confines of this Court.  I believe that the requisite protection in this case would be accomplished by providing A&P Rule 13 notice of public discipline so as to inform other jurisdictions in which we believe that the respondent is licensed (discussed further in part III., below) of the terms of his resignation.  The Court's narrow view of the "protection of the public" is yet another reason that I cannot join in the Court's per curiam order.

### III.  Notification of Order Imposing Public Discipline

Under A&P Rule 13(b), the Clerk "will promptly mail a certified copy of the order imposing public discipline to another court or other governmental entity if there is reason to believe that the practitioner is admitted to practice before that court or entity."  Under A&P Rule 13(c), such notice is also to be made to the American Bar Association's (ABA) National Discipline Data Bank. As I noted above in part II., such notification appears to signify the Court's recognition of a broader interest in the "protection of the public".  The Clerk should make such notification here, I believe, because this order is, for the reasons set forth below, essentially an "order imposing public discipline".  A&P RULE 13(b), (c).  Furthermore, I would note that any member of the public, including, of course, any judge or staff member of this Court, is free to bring to the attention of the appropriate authorities the existence of this order, and that attorneys may in fact be under a heightened obligation to take such action.  *Cf.* ABA Model Rule of Professional Conduct 8.3(a) (providing that "[a] lawyer having knowledge that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, shall inform the appropriate professional authority"); A&P RULE 4(a) (providing that "[u]nless otherwise provided by specific rule of the Court, the disciplinary standard for practice [in this Court] is the Model Rules of Professional Conduct adopted by the American Bar Association on August 2, 1983, as amended").

I note that, in explaining its authority to allow the respondent to resign from the Court's Bar, the Court today states that "it is well established that a federal court possesses the inherent power to control admission to its [B]ar and to **discipline** attorneys who appear before it."  *Ante* at 1 (emphasis added).  Furthermore, to the extent that the A&P Rules speak to our authority to take such action, they state as follows:

> Discipline imposed under these rules for practitioner misconduct may consist of disbarment (or revocation of admission to practice in the case of a non-attorney practitioner), suspension from practice before the Court, monetary sanction (including fines), public reprimand, private admonition (in the form of an unpublished (and nonpublic) order), ***or any other discipline that the Court considers appropriate***.

A&P RULE 5(a) (emphasis added). Over and above any guidance we may glean from these sources, however, I believe that there are two other, highly salient points that establish that the Court's order today is essentially an "order imposing public discipline".

First, I note that the Court not only accepted the respondent's resignation, but **dictated to him the terms and the form under which it would accept such resignation**. Therefore, the Court "imposed" these conditions upon the respondent, i.e., his options were either to accept resignation on the Court's terms and conditions or to continue with the Committee's investigation process. Second, in his May 30, 2002, motion to the Court, the respondent proposed only to "agree not to seek admission to practice before this Court at any time in the future", but, in his official resignation from the Bar of the Court, on the form **dictated by the Court**, the respondent "relinquishe[d] any right he may have ever in the future to apply for reinstatement or readmission to the Bar of the United States Court of Appeals for Veterans Claims, either as an attorney or as a non-attorney practitioner". There is a significant difference between proposing, in a motion made to the Court, to agree not to seek readmission as an attorney and an explicit relinquishment, in a resignation letter that is, in effect, incorporated by reference in a public order of the Court, of **any** right to reinstatement or readmission. As to the relinquishment of the right to seek readmission to practice, there is also a significant difference between practicing as an attorney and practicing **either** as an attorney **or** as a non-attorney practitioner (a separate category of representation). The Court's having "imposed" upon the respondent in this proceeding legally binding restrictions barring any future practice before this Court by him in **any** capacity, in light of the foregoing analysis, constitutes "discipline".[1]

---

[1] Analogous cases arising out of regulation of the Bar of the Supreme Court of Kentucky, of which the respondent is a member, may be read to support the notion that resignation while under investigation is, by itself, a form of "discipline". *Marsh v. Ky. Bar Ass'n*, 28 S.W.3d 859 (Ky. 2000); *Head v. Ky. Bar Ass'n*, 938 S.W.2d 581 (Ky. 1997); *O'Bryan v. Ky. Bar Ass'n*, 824 S.W.2d 877 (Ky. 1992). In each of these three cases, the Supreme Court of Kentucky allowed resignation while under investigation, but mandated that each such movant had to comply with Kentucky Supreme Court Rule (SCR) 3.390. *Marsh*, 28 S.W.3d at 860; *Head*, 938 S.W.2d at 582; *O'Bryan*, 824 S.W.2d at 878. This rule states, inter alia, as follows:

> There shall be contained **in every opinion or order, imposing disbarment or a suspension of more than sixty (60) days**, a direction that such suspended or disbarred attorney notify all Courts in which he/she has matters pending, and all clients for whom he/she is actively involved in litigation and similar legal matters, of his/her inability to continue to represent them and of the necessity and urgency of promptly retaining new counsel.

SCR 3.390 (emphasis added). It is reasonably arguable that, having included such SCR 3.390 notice in these orders in which the Supreme Court of Kentucky allowed an attorney to resign while under investigation, that court considered these orders either to be "imposing disbarment or a suspension of more than sixty . . . days" or to be the equivalent of such orders. Under our own Rules, such disbarment or suspension is clearly a form of discipline. U.S. VET. APP. R. ADM. & PRAC. 5(a). I believe that we should take notice of the fact that these actions of the relevant state court, of which the respondent is a member and on the basis of which he was, reciprocally, admitted to this Court's Bar, may seem to be construing resignations while under investigation as being the equivalent of disbarment or suspension, and, thus, a form of discipline.

## IV.  Conclusion

As stated above, I cannot agree with the ultimate disposition of this case, because I believe that the order constitutes public discipline requiring public notification under A&P Rule 13. Although I believe that the respondent's resignation, under the terms dictated by the Court, is a proper resolution for this matter, I do not believe that the Court should take that action in this case without public notice and without addressing several matters discussed above.  Therefore, for the foregoing reasons, I dissent from the Court's order  to the extent that it may be read as indicating that Rule 13(b) and (c) notifications will not be made by the Clerk.